## A04A0584. BROWN v. THE STATE.

(601 SE2d 405)

MIKELL, Judge.

A jury found Donnell Brown guilty of armed robbery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. After denying his motion for new trial, the court granted him permission to file an out-of-time appeal. Brown challenges the sufficiency of the evidence to support his convictions, the exclusion of letters allegedly written by his accomplice, and the trial court's refusal to charge the jury on identification, bare suspicion, and guilt by association. Finding no harmful error, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt.[1]

---

[16] OCGA § 16-13-26 (1) (D).

[1] (Citation omitted.) *Bates v. State*, 259 Ga. App. 232, 233 (1) (576 SE2d 619) (2003), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence adduced at trial shows that on October 21, 2000, two armed men robbed the Victory Drive Package Store in Columbus. The owner, Won Sik Yi, testified that he was standing behind the cash register when the men entered the store. One of the robbers pointed a gun at Yi's head, ordered him to the ground, and then took the black plastic bag in which Yi kept money. The second robber held a gun on Yi's employee, Dana R. Banning, who was stocking beer in the cooler. Yi and Banning testified that the robbers wore masks as well as hooded sweatshirts, so that only their eyes were visible. Banning testified that the masks appeared to be wash-cloths. Neither victim was able to identify the robbers, but Banning gave a physical description of his assailant to the police. Banning also testified that his assailant called the other man "D." The robbery was captured on videotape, which was shown to the jury, but the robbers' faces were obscured.

Shortly before the robbery, Tiffany Tourville and her mother, Becky Tourville, whose house is located less than one block away from the package store, testified that they noticed suspicious activity on the street in front of their house. Tiffany testified that she was sitting on the porch around 10:30 p.m. when her dog began barking. She turned and saw three men. Two of them were walking away from the store toward a car that was parked on the wrong side of the street. The third man was standing on the sidewalk, motioning toward the store, and telling the others to "come on." Her suspicions aroused, Tiffany called her mother outside.

Becky Tourville testified that she observed the third man walking around while the other two went toward the store. Before they returned, Becky approached the vehicle to obtain a description and tag number, and she observed that the front of the car had a white tag with red letters. Tiffany and her mother both testified that they saw the two men come running back to the car and that one man carried a gun.

Detective Chuck Walker testified that he responded to the scene of the robbery at 10:45 p.m. After interviewing Yi, Banning, and the Tourvilles, Walker began driving back to the police station. While en route, he observed a vehicle matching the description given by the Tourvilles. Walker, who was driving an unmarked vehicle, radioed for assistance. A second officer arrived, and they stopped the vehicle in a parking lot. The officers drew their weapons and ordered the suspects out of the car. Two of the men laid down on the ground, but the third man fled on foot. Walker gave chase but could not catch the man. The two men who were captured were later identified as Derrick Williford and Jessie Green.

Walker testified that he searched the car and recovered $350 in cash, a .25 automatic weapon, a plastic bag, and cloth gloves. A

washcloth, $50 in cash, and cloth gloves were recovered from Jessie Green. The license plate was removed from the front of the vehicle and was identified by the Tourvilles as the one they saw on the car in front of their house. Both women identified the vehicle from photographs introduced into evidence at trial.

Sergeant Gary Miller, a crime scene technician, testified that he lifted latent fingerprints from the inside and the outside of the driver's window. He submitted the fingerprints to Sergeant Jessie Thornton, who entered them into the Automated Fingerprint Identification System ("AFIS"). With AFIS's assistance, Thornton identified the fingerprint as belonging to Brown's left index finger. Thornton was also able to match two other fingerprints from Brown's left hand to prints retrieved from the vehicle.

Green gave two custodial statements incriminating Brown. Green told the police that he, Brown and Williford are first cousins; that he calls Brown "D"; that before the robbery, they were at a friend's house, smoking weed and drinking; that "D" and Williford said they "needed to make a lick," which Green thought meant break into cars; that they were riding around smoking when the other men stopped, put on masks, and parked down the street from the store; that his cousins had guns when they went into the store; and that Brown was driving the car when they were stopped by the police. Green identified Brown from a photographic array. Green gave a second statement, in the presence of his attorney and the prosecutor, detailing the events of the night of the incident, including Brown's involvement. An audiotape of the statement was played for the jury.

At trial, Green recanted these statements. Green claimed that he gave the statements because the prosecuting attorneys offered him a three-year sentence in exchange for implicating Brown. Green testified that the third man's name was Mark and that Brown was not involved in the robbery.

1. Brown challenges the sufficiency of the evidence to support his convictions. Specifically, he asserts that the state relied solely on Green's testimony to identify Brown as a participant in the crimes, and failed to introduce sufficient evidence to corroborate this testimony. We disagree. "Slight evidence of a defendant's identity and participation from an extraneous source is all that is required to corroborate the accomplice's testimony and thus support the verdict. The necessary corroboration may be by circumstantial evidence."[2]

Unrebutted expert testimony established that Brown's fingerprints were in the vehicle that was identified as the getaway car.

---

[2] (Citation and punctuation omitted.) *Ross v. State*, 264 Ga. App. 830, 831 (1) (592 SE2d 479) (2003). Accord *Chergi v. State*, 234 Ga. App. 548, 550 (4) (507 SE2d 795) (1998).

"Having heard the expert's unrebutted testimony about the matching prints and having considered the basis from which the witness formed that opinion, the jury was authorized to find that Appellant was one of the three occupants of the car."[3] We conclude that the fingerprint evidence corroborated Green's testimony, and that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Brown was guilty of the crimes for which he was convicted.[4]

2. Brown argues that the trial court erred in excluding two letters, allegedly written by Green to Brown's alibi witness, in which Green recants his custodial statements. Defense counsel produced these after the jury was sworn, stating that they had been given to him by Brown's mother during a break in the trial. The state objected to their admission on the ground that the parties had elected to proceed under the discovery provisions of OCGA § 17-16-1 et seq. and that Brown had failed to produce the letters within five days prior to trial, as required by OCGA § 17-16-4 (b) (1). After determining that one of the letters had been in Brown's possession for almost five months, the trial court excluded the documents.

Under OCGA § 17-16-6, if a defendant fails to comply with the requirements of the criminal discovery laws, the trial court may "order the defendant to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the defendant from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances." This Code section gives the trial court "discretion to take any listed corrective action it deems appropriate."[5] However, a showing of bad faith and prejudice to the state is required to warrant exclusion of evidence.[6] In the case at bar, the trial court made clear that it was excluding the evidence based solely upon the fact that Brown had not timely provided the letters. The trial court made no specific finding that Brown acted in bad faith and that the state was prejudiced thereby. Absent those findings, the exclusion of the evidence was error.[7] However, we find no basis for reversal. "Error alone is not automatically grounds for a new trial but is subject to scrutiny for harmless error."[8] It is axiomatic that the exclusion of evidence which is merely

---

[3] (Citation omitted.) *Roebuck v. State*, 277 Ga. 200, 203 (1) (586 SE2d 651) (2003).

[4] *Ross*, supra, citing *Jackson v. Virginia*, supra.

[5] *Jones v. State*, 251 Ga. App. 285, 286 (1) (554 SE2d 238) (2001).

[6] Id.

[7] *Williams v. State*, 256 Ga. App. 249, 251 (1) (568 SE2d 132) (2002).

[8] (Punctuation and footnote omitted.) Id.

cumulative is not reversible error.[9] Green testified at trial and recanted his statements implicating Brown. He testified that a different man had served as his accomplice. Therefore, the "exclusion of what clearly would have been cumulative [evidence] was certainly harmless."[10]

3. Brown contends that the trial court erred by failing to give his requested jury charges on identification, bare suspicion and guilt by association. We disagree.

(a) Brown's requested charge on identification instructed the jury to assess the reliability of eyewitness identification. However, a review of the record shows that there was no evidence which raised the issue of mistaken identity. Rather, Brown asserted the defense of alibi, on which the jury was charged. Accordingly, the trial court's refusal to give his requested charge on the reliability of eyewitness identification was not error.[11]

(b) The trial court did not err by refusing to charge the jury on bare suspicion and guilt by association. The record shows the trial court gave a full and complete charge on reasonable doubt, the presumption of innocence, and presence at the scene of a crime. As these charges cover the principles of law in the requested charges, there was no error. "A trial court is not required to instruct the jury in the exact language of a requested charge, and when the principle of law is covered in another charge[,] that is sufficient."[12]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 18, 2004.

*John R. Mobley II*, for appellant.
*J. Gray Conger, District Attorney*, for appellee.

---

[9] *Pope v. State*, 178 Ga. App. 148, 149 (1) (342 SE2d 330) (1986).

[10] *King v. State*, 194 Ga. App. 770, 771 (4) (391 SE2d 769) (1990).

[11] See *Jones v. State*, 188 Ga. App. 240, 241 (2) (372 SE2d 828) (1988); *Williams v. State*, 171 Ga. App. 34, 35 (4) (318 SE2d 768) (1984).

[12] (Citation omitted.) *Morrison v. State*, 220 Ga. App. 151, 155 (3) (b) (469 SE2d 686) (1996). Accord *Lowe v. State*, 267 Ga. 180, 181 (2) (476 SE2d 583) (1996).