A09A0789. WEBB v. THE STATE.
(685 SE2d 498)

DOYLE, Judge.

A jury convicted Kassie Webb of the lesser-included offense of cruelty to children in the second degree.[1] In her sole enumeration of error, Webb contends that the trial court erred by refusing to allow testimony by a witness whom she failed to identify on her witness list without a showing of bad faith and harm to the State and where the witness was identified as a potential witness by the State on the State's supplemental witness list. We agree and reverse.

Construed in favor of the verdict,[2] the evidence shows that on April 23, 2006, Webb, along with her husband, Rocky, and other family members, celebrated the first birthday of her daughter, K. W., at the home of Webb's parents. After visiting her husband's family and stopping at a restaurant, Webb, Rocky, and K. W. returned to Webb's sister's home where they were temporarily residing. Rocky and James Alexander, Webb's sister's then-boyfriend, sat down in the kitchen while Rocky finished eating, and Webb began to pack a diaper bag for K. W.'s day care. Noticing that K. W. needed her diaper changed, Webb asked Rocky to change it. When Rocky did not do so, Webb told him not to worry about it, picked up K. W., and took her into the adjoining bedroom.

According to Webb, she laid K. W. on the bed while she went to the closet to get a diaper. When Webb turned around, she noticed K. W. had moved close to the edge of the bed. As a result, Webb dove onto the bed and attempted to catch K. W., but she was only able to grab the inseam of K. W.'s shorts as the child fell to the floor, hitting her head. Neither Rocky nor Alexander could see into the bedroom, but both heard a thump and an unusual scream from K. W. Webb picked up K. W., trying to comfort her, and walked back into the kitchen to ask Rocky for K. W.'s pacifier. While looking for the

---

[1] OCGA § 16-5-70 (c) ("Any person commits the offense of cruelty to children in the second degree when such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain.").

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

pacifier, Webb noticed that K. W.'s eyes were rolling back into her head, and K. W. began to seize. Webb handed K. W. to Rocky and called her parents for advice. At this point, Alexander suggested they go to the hospital, which they did.

On the way to the hospital, Webb made a series of phone calls to her parents, sister, and Rocky's mother, Sue. At trial, Sue testified that during the phone call, Webb described the incident and admitted that she shook K. W. in an attempt to get her to stop crying. Webb admitted telling Sue that she shook K. W., but said she meant she was bouncing K. W. in her arms trying to comfort her.

After doctors and social workers at the hospital suspected that K. W.'s injuries were the result of shaken baby syndrome, the Department of Family and Children Services ("DFCS") began investigating K. W.'s injuries, and the State eventually indicted Webb for first degree cruelty to children.

Webb elected to opt-in to discovery under the Criminal Discovery Act,[3] and approximately 30 days prior to trial, the State produced a document titled "Supplemental State's Witness List." The State also served Webb with a subpoena/summons that commanded her attendance and listed 11 witnesses. Dr. Guy W. Jordan appeared on the State's supplemental witness list, but did not appear on the State's subpoena/summons. Dr. Jordan also did not appear on Webb's witness list.

At trial, Webb's attorney called Dr. Jordan as a witness. While the State admitted to having a copy of Dr. Jordan's report and having conducted some investigation into his testing methodologies, the State objected to his testimony because he was not identified on Webb's witness list. Webb's attorney did not recall that the State had listed Dr. Jordan on its supplemental witness list and did not raise this with the trial judge at that time. The State did not inform the trial court that Dr. Jordan was listed on its supplemental witness list. The trial court then excluded the witness based solely on the fact that he was not on Webb's witness list.

After closing arguments, but prior to the charging of the jury, Webb's attorney made a motion for mistrial on the grounds that the trial court should have allowed the testimony of Dr. Jordan because he was listed on the State's supplemental witness list. In support of the motion, Webb's attorney tendered into evidence the supplemental witness list and Dr. Jordan's report as a proffer of his potential testimony on behalf of Webb. The trial court denied the motion for mistrial, which was renewed after the charges were read to the jury. On March 17, 2008, Webb moved for a new trial arguing, among

---

[3] OCGA § 17-16-1 et seq.

others things, that the trial court erred by refusing to allow Dr. Jordan to testify. The trial court denied the motion for new trial, and this appeal followed.

On appeal, Webb argues that the trial court abused its discretion by refusing to allow Dr. Jordan to testify on her behalf, absent a showing of bad faith and harm to the State, and despite the fact that he was identified as a potential witness on the State's witness list. We agree.

Once a defendant opts-in to the Criminal Discovery Act, the provisions of OCGA § 17-16-1 apply to the case.[4] The Act requires that no later than ten days before trial, the prosecuting attorney shall furnish opposing counsel in confidence the names, current locations, dates of birth, and telephone numbers of the State's witnesses.[5] Within ten days thereafter (but not later than five days before trial), defense counsel is required to produce its witness list to the State.[6] Additionally, OCGA § 17-16-10 states:

> The defendant need not include in materials and information furnished to the prosecuting attorney under this article any material or information which the prosecuting attorney has already furnished to the defendant under this article. The prosecuting attorney need not include in materials and information furnished to the defendant under this article any material or information which that defendant has already furnished to the prosecuting attorney under this article. Either party may call as a witness any person listed on either the prosecuting attorney's or defendant's witness list.[7]

And the Act outlines the penalties for a party's failure to comply:

> If at any time during the course of the proceedings it is brought to the attention of the court that the defendant has failed to comply with the requirements of this article, the court may order the defendant to permit the discovery or inspection, interview of the witness, grant a continuance, or, *upon a showing of prejudice and bad faith*, prohibit the defendant from . . . presenting the witness not disclosed.[8]

There is no dispute that the State furnished Webb's attorney

---

[4] See OCGA § 17-16-2 (a).

[5] See OCGA § 17-16-8 (a).

[6] See id.

[7] OCGA § 17-16-10.

[8] (Emphasis supplied.) OCGA § 17-16-6.

with its supplemental witness list identifying Dr. Jordan as a potential witness. The State claims, however, that even though the document was titled "Supplemental State's Witness List," it was just a list of all of the names that appeared in the State's file, and the State's actual witness list was included in the subpoena/summons served on Webb. Whether or not this is true, there is no way for Webb to have known from the face of the supplemental witness list that it was something other than what it purported to be, i.e., a list of the State's witnesses. Without any qualifying language, Webb was entitled to rely on it as a document furnished to her pursuant to OCGA § 17-16-10 and was thus not required to also list Dr. Jordan on her own witness list in order to call him as a witness at trial.[9]

When the trial court excluded Dr. Jordan's testimony, the trial court was not aware that he had been identified by the State on its supplemental witness list. However, when ruling on the State's objection to the witness because of an alleged discovery violation on the part of the defense, the trial court did not require the State to make the requisite showing of prejudice and bad faith on the part of Webb as required by OCGA § 17-16-6.[10] Thus, it was error to exclude the testimony of Dr. Jordan based solely on the fact that he was not listed on Webb's witness list.[11]

Furthermore, the State admitted that it had Dr. Jordan's report and had researched the validity of the specific tests utilized by Dr. Jordan. Thus, the State could not claim surprise.[12] And while Webb's attorney did not recall that the State had in fact listed Dr. Jordan as a witness until after closing arguments, the State is presumed to know who is on its own witness list, and the State did not bring it to the attention of the trial court. The State cannot gain an advantage by sitting silently and allowing an erroneous ruling to be made. As a result, because the State could not have shown prejudice or bad faith on the part of Webb, the trial court erred in excluding the testimony.

The State counters that even if Webb had the right to call Dr. Jordan as a witness because he was listed on the State's supplemental witness list, the error was harmless because the testimony was cumulative of other trial testimony, and Webb admitted that she shook the baby.[13] The State's trial presentation focused heavily on

---

[9] See OCGA § 17-16-10.

[10] See *Ware v. State*, 298 Ga. App. 232, 234 (2) (679 SE2d 797) (2009); *Williams v. State*, 256 Ga. App. 249, 251 (1) (568 SE2d 132) (2002); *Hill v. State*, 232 Ga. App. 561, 562 (502 SE2d 505) (1998) ("trial court had discretion under OCGA § 17-16-6 to exclude the testimony of a nondisclosed defense witness only upon a showing of prejudice to the State and bad faith by the defense").

[11] See id.

[12] See *Kanji v. State*, 238 Ga. App. 319, 319-320 (522 SE2d 234) (1999).

[13] A review of Dr. Jordan's report and the testimony of Dr. Amy Davis reveals that while

Webb's alleged lack of motherly instincts and unusual behavior while K. W. was in the hospital, and, therefore, it cannot be said that the testimony of Dr. Jordan to the contrary would not have made a difference in the outcome of what the trial court described as a "very, very close case."[14] Accordingly, we conclude that the error was not harmless.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

## DECIDED OCTOBER 27, 2009.

*Thomas A. Camp*, for appellant.
*Robert W. Lavender, District Attorney*, for appellee.

---

Dr. Davis testified that she agreed with Dr. Jordan's report, the contents of his report were not made available to the jury, and thus, his testimony would not have been cumulative.

[14] Dr. Jordan is a psychologist who performed a psychological evaluation of Webb at DFCS's request. The evaluations took place on June 27 and July 3, 2006, and Webb's scores were "reflective of excellent potential for knowing what to do and how to manage her parenting role."