**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 17, 2014**

# In the Court of Appeals of Georgia

A13A1786. MITCHELL v. THE STATE.

RAY, Judge.

A DeKalb County jury convicted Christopher Mitchell of armed robbery (OCGA § 16-8-41). Mitchell appeals, contending that the trial court erred in excluding the testimony of two newly-discovered defense witnesses. He also contends that he had ineffective assistance of counsel. For the reasons that follow, we reverse.

At trial, the State relied primarily on the testimony of the victim, Ronald Haywood. Viewed in the light most favorable to the guilty verdict,[1] the evidence showed that Haywood had previously worked with a man known by the nickname "Naro." One day, Haywood mentioned to Naro that he wanted to buy a laptop computer, and Naro indicated that his cousin had one for sale. Shortly thereafter,

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Haywood sent a text message to Naro's phone stating that he wanted to purchase the laptop, and he received a text reply from a man who identified himself as Naro's cousin, stating that "Yes, I have the computer to sell." Haywood and the man agreed to meet at a Church's Chicken restaurant. The man then gave Haywood another phone number with which to contact him, and Haywood wrote the number down on a piece of paper. According to Haywood, he had never met nor seen Naro's cousin before and did not know his name, but the man had indicated that he would be in a burgundy Ford Taurus.

When Haywood arrived at the Church's Chicken restaurant, he did not see anyone there. Haywood then called the phone number that he had been given, and the man who had previously identified himself as Naro's cousin told Haywood to meet him at an apartment complex.

Upon his arrival at the apartment complex, Haywood saw two men waving at him. Haywood then attempted another telephone call to see if one of the men was Naro's cousin, but he got no response. As Haywood was driving away, Naro's cousin called back and confirmed that he was one of the men who had been waving at him. Haywood returned and found one of the men standing near the entrance of the apartment complex, but the second individual was not with him. The man then got

2

into the vehicle with Haywood and directed him to an apartment in the back of the complex. As Haywood was parking his vehicle, he observed a burgundy Ford Taurus parked nearby in the parking lot. After exiting his vehicle, Haywood and the man walked around the back of the apartment building, and the man pulled out a silver handgun and pointed it at Haywood. During the robbery, Haywood was instructed to remove his clothes and run away, and the man took Haywood's pants containing his driver's license, car keys, and $250 in cash.

Haywood later gave the police a description of the robber and the Ford Taurus, as well as the phone number that he had used to contact the man. During the subsequent investigation, the police learned that the phone number belonged to Mitchell and that the Ford Taurus was registered to Charles White, the father of Mitchell's friend.[2] Haywood was presented with a photographic lineup, and he positively identified Mitchell as the man who had robbed him. The silver handgun used in the robbery and the items taken from Haywood were never recovered.

---

[2] Mitchell's friend, Carlos Ricardo White, was also charged as a co-defendant in the indictment, but the trial in this case proceeded only against Mitchell.

Mitchell was arrested and subsequently interviewed by the police. After being advised of his *Miranda*[3] rights, Mitchell admitted that he was Naro's cousin, that Carlos White was his friend, and that Carlos usually drove the Ford Taurus.

Based on the above evidence, the jury found Mitchell guilty of armed robbery and not guilty of possession of a firearm during the commission of a felony.

1. Mitchell contends that the trial court erred when it denied his request to permit two newly-discovered witnesses to testify for the defense. We agree.

The victim and sole eyewitness, Haywood, was the first witness to testify at trial. On direct examination, Haywood recounted his version of the events and specifically testified that he had neither seen nor met Mitchell (Naro's cousin) prior to the robbery. During a brief recess, Mitchell's trial counsel was approached by two individuals who had been sitting in the courtroom observing the trial. They informed counsel that they recognized Haywood when he came into the courtroom, that Haywood was known by a different name in the community, and that Haywood had known Mitchell for several years.[4] Thus, the existence of these witnesses and the

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[4] Trial counsel stated to the trial court that, prior to trial, neither Mitchell nor the two individuals knew anyone by the name of "Robert Haywood" and that it was only after Haywood appeared at trial that they recognized him as someone they knew.

relevance of the information they possessed did not become apparent until Haywood appeared on the witness stand and testified.

At the trial court's request, Mitchell's counsel made a proffer of what the witnesses would testify to, and it was readily apparent from this proffer that the credibility of the victim could be called into question. However, the trial court ultimately denied Mitchell's request to permit the witnesses to testify because i) their names were not provided to the State prior to trial and ii) these witnesses had remained in the courtroom during Haywood's testimony in violation of the rule of sequestration.

(a) *Reciprocal discovery*. OCGA § 17-16-6 provides, in pertinent part, that

[i]f at any time during the course of the proceedings it is brought to the attention of the court that the defendant has failed to comply with the requirements of [reciprocal discovery], the court may order the defendant to permit the [State to] interview . . . the witness, grant a continuance, *or, upon a showing of prejudice and bad faith, prohibit the defendant from . . . presenting the witness not disclosed*[.]

(Punctuation omitted; emphasis supplied.)

In ruling on the State's objection to the witnesses based on the alleged discovery violation, the trial court erred by failing to require the State to make the

5

requisite showing of prejudice and bad faith as required by OCGA § 17-16-6. See

*Webb v. State*, 300 Ga. App. 611, 613-614 (685 SE2d 498) (2009); *Ware v. State*, 298

Ga. App. 232, 234 (2) (679 SE2d 797) (2009); *Williams v. State*, 256 Ga. App. 249,

251 (1) (568 SE2d 132) (2002); *Hill v. State*, 232 Ga. App. 561, 562 (502 SE2d 505)

(1998) ("trial court had discretion under OCGA § 17-16-6 to exclude the testimony

of a nondisclosed defense witness only upon a showing of prejudice to the State and

bad faith by the defense").

Notably, in its order denying Mitchell's motion for new trial, the trial court

specifically found, in relation to one of Mitchell's ineffective assistance claims, that

trial counsel "was not deficient for not placing [the] two witnesses on the defense

witness list because he did not know about the witnesses until the trial was

underway." As the record clearly shows that there was no bad faith on the part of

Mitchell in failing to disclose the newly-discovered witnesses, the trial court erred in

excluding the witnesses based on a violation of reciprocal discovery. *Webb*, supra.

(b) *Sequestration*. The trial court's decision to exclude Mitchell's defense

witnesses was also based, in part, on a violation of the rule of sequestration. The trial

court found that Mitchell had invoked the rule of sequestration "and then chose not

to follow it," and that "he should not be rewarded for circumventing the meaning of

6

the rule of sequestration[.]" However, the record does not support the trial court's reasoning.

Here, at the time the rule was invoked, the two individuals at issue were not potential witnesses. They became witnesses only after Haywood appeared on the witness stand and testified, and they promptly informed defense counsel of this fact. As noted in subsection (a) of this Division, the trial court found that Mitchell's counsel did not know about the witnesses until after the trial was underway. Under these circumstances, we fail to see how trial counsel could have "chosen" to disregard the rule of sequestration.

Moreover, even if we were to assume that the rule of sequestration had been violated, exclusion of the witnesses was not the proper remedy. See *Jordan v. State*, 247 Ga. 328, 347 (10) (276 SE2d 224) (1981) (in light of a defendant's constitutional right to call witnesses on his behalf, a defense witness who has violated the rule of sequestration in a criminal case shall not be prevented from testifying).

> When the rule of sequestration is violated, the violation goes to the credibility rather than the admissibility of the witness' testimony. A party's remedy for a violation of the rule is to request the trial court to charge the jury that the violation should be considered in determining the weight and credit to be given the testimony of the witness.

7

(Citation and footnote omitted.) *Robinson v. State*, 246 Ga. App. 576, 583 (7) (541 SE2d 660) (2000).

Accordingly, to the extent that the trial court's decision was based on a violation of the rule of sequestration, it was error to exclude the witnesses from testifying. *Jordan*, supra.

When this issue arose at trial, the trial court requested Mitchell's counsel to make a proffer of what the witnesses would testify to, and it was readily apparent from this proffer that the witnesses' testimony could have been used to impeach Haywood. As the State's case against Mitchell hinged on the credibility of Haywood as the sole eyewitness to the armed robbery, we cannot say that the exclusion of the witnesses' testimony was harmless. Accordingly, Mitchell's conviction must be reversed.

2. We do not address Mitchell's remaining enumeration of error relating to ineffective assistance of counsel as it is not likely to recur on retrial.

*Judgment reversed. Barnes, P. J., and Miller, J., concur.*