**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 23, 2018**

# In the Court of Appeals of Georgia

A18A1394. DIAZ v. THE STATE.

RICKMAN, Judge.

Hipolito G. Diaz was tried by a jury and convicted of felony theft by receiving stolen property. On appeal, Diaz contends that there was insufficient evidence to support his conviction because the State failed to prove venue beyond a reasonable doubt and that the trial court erred by excluding a defense witness' testimony. For the following reasons we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Hall v. State*, 335 Ga. App. 895 (783 SE2d 400) (2016).

So viewed, the evidence showed that the victim was a concrete finisher and owned multiple Bobcat tractors that he used on job sites. For over a year, the victim routinely left one of his tractors at a job site overnight. One morning in July 2014, the victim arrived at a job site to retrieve his tractor and realized that it was missing. The victim called the Douglas County Sheriff's Office to report the tractor as stolen.

The victim purchased the tractor in question in 2013 for $25,000 from the Bobcat of Atlanta store and received a bill of sale listing the tractor's unique PIN number. The tractor was used but in good condition, and the victim made a few distinct alterations to it for general maintenance.

Approximately three months after the tractor was stolen, a deputy made a traffic stop in Douglas County on a vehicle pulling a tractor on a trailer. The driver of the vehicle told the deputy that the tractor belonged to his uncle. The deputy observed that the tractor's PIN number was scratched out which, based on his training and experience, was indicative of someone attempting to conceal the identity of the tractor. The deputy asked the driver to unload the tractor at the Douglas County

2

Sheriff's Office and to tell his uncle to meet him there. When the driver's uncle, Diaz, arrived he provided the deputy with a handwritten letter which he claimed was a bill of sale for the tractor. The letter indicated that Diaz purchased the tractor for $8,000 in 2008.

An investigator inspected the tractor and observed that the scratch marks on the PIN number appeared to be recent because they were not rusty. The investigator was able to locate an engine identification number in an alternate location on the tractor, and the number traced back to the victim's missing tractor. The investigator also found a receipt made out to the victim's company on the floorboard. The victim identified his tractor by the distinctive improvements he had made to it.

The victim testified that he knew Diaz through years of doing similar work in the same area and that he knew him as "Polo Diaz." After the tractor was returned to the victim, Diaz worked for the victim, but the victim was unaware that Hipolito Diaz and Polo Diaz were the same person. In response to a question from the victim, Diaz even denied knowing Hipolito Diaz until one evening when he called the victim, admitted that he "ended up with [the victim's] [tractor]," and asked for the victim to drop the charges.

A manager for Sunbelt Rentals testified at trial that his company purchased the tractor at issue in 2006. From 2006 until 2012, the tractor was located in Louisiana. In 2012, Sunbelt Rentals sold the tractor to Bobcat of Atlanta for around $23,000 to $25,000. The manager testified that $8,000 for this tractor would be "an insane price" and "nowhere near [its] value." A sales manager for Bobcat of Atlanta who was qualified as an expert in valuing Bobcat tractors, testified that a Bobcat tractor's value does not change a significant amount from year to year and that for a Bobcat tractor to be sold for $8,000 there had to be "something wrong with it."

Diaz testified that he purchased the tractor for $8,000 from someone who he met at a gas station. Diaz admitted that he called the victim and that the victim told him that he did not have the authority to drop the charges.

The grand jury returned an indictment charging Diaz with felony theft by receiving stolen property[1] and involvement with a motor vehicle having identification removed. The trial court granted a directed verdict as to the count of involvement with a motor vehicle having identification removed. Diaz was convicted of felony theft by receiving stolen property. Diaz filed a timely motion for new trial which was

---

[1] OCGA § 16-8-7.

denied by the trial court. Diaz appeals from both his conviction and the denial of his motion for new trial.

1. Diaz contends that there was insufficient evidence to support his conviction because the State failed to prove venue beyond a reasonable doubt. We disagree.

Venue for theft by receiving stolen property is appropriate "in any county in which the accused exercised control over the property which was the subject of the theft." OCGA § 16-8-11. Venue may be established through direct or circumstantial evidence. *Petty v. State*, 271 Ga. App. 547, 548 (2) (610 SE2d 169) (2005). "The issue of venue is for the jury, and if any evidence supports the jury's decision, it may not be set aside." (Citation and punctuation omitted). Id.

Here, the evidence showed that the tractor was both stolen and recovered in Douglas County. When the tractor was recovered, Diaz's nephew informed the deputy that the tractor belonged to Diaz. After learning that there were issues related to the tractor's ownership, Diaz went to the Douglas County Sheriff's Office, informed the deputy that he was the owner of the tractor, and provided him with a purported bill of sale. Additionally, Diaz testified that he had lived in Douglas County for approximately seven years. Accordingly, the evidence established that Diaz exercised

control over the stolen tractor in Douglas County. See *Petty*, 271 Ga. App. at 548 (2); see also *Kennon v. State*, 232 Ga. App. 494, 495 (2) (502 SE2d 330) (1998).

2. Diaz contends that the trial court erred by excluding his witness' testimony. The trial court excluded the witness from testifying because it found that Diaz acted in bad faith by violating OCGA § 17-16-8 (a) for failing to provide the State with a phone number and birth date for Diaz's witness, his nephew. We agree that the trial court erred but find that error to be harmless.

Pursuant to OCGA § 17-16-8 (a), "the defendant's attorney . . . no later than five days prior to trial, or as otherwise ordered by the court, shall furnish to the opposing counsel as an officer of the court, in confidence, the names, current locations, dates of birth, and telephone numbers of that party's witnesses." Additionally, OCGA § 17-16-10 provides, "[t]he defendant need not include in materials and information furnished to the prosecuting attorney under this article any material or information which the prosecuting attorney has already furnished to the defendant under this article." The corrective actions available to the court are set out in OCGA § 17-16-6:

> If at any time during the course of the proceedings it is brought to the
> attention of the court that the defendant has failed to comply with

[discovery requirements], the court may order the defendant to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the defendant from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances . . . .

"This Code section gives the trial court discretion to take any listed corrective action it deems appropriate." (Citation and punctuation omitted.) *Brown v. State*, 268 Ga. App. 24, 27 (2) (601 SE2d 405) (2004). However, "[a]lthough the exclusion of evidence is among the potential remedies, that harsh remedy should be imposed only where there is a showing of both bad faith by the State and prejudice to the defense." *Cushenberry v. State*, 300 Ga. 190, 194 (2) (a) (794 SE2d 165) (2016).

Here, the record shows that Diaz filed his witness list in November 2005, listing his nephew as a potential witness and indicating that his telephone number was "[t]o be disclosed." A brief summary of Diaz's nephew's anticipated testimony was included. The summary stated, "[Diaz's nephew] was present with him at the time that the [tractor] was offered and later purchased. [Diaz's nephew] is also expected to testify as to how the [tractor] was offered for sale to [Diaz] and later on purchased by [Diaz]."

Over a year after Diaz filed his witness list, the State filed supplemental discovery including the complaint report from the traffic stop when the tractor was recovered. A photocopy of Diaz's nephew's Mexican identification card with what appears to be his birth date was attached. At trial, the deputy testified that he had the occupants in the car write down their names and dates of birth.

After the State closed its case, it moved to exclude Diaz's nephew's testimony for failure to comply with OCGA § 17-16-8.[2] The State argued that Diaz's nephew's testimony should be excluded simply because Diaz failed to provide the State with his phone number, address, and date of birth. The State focused its entire argument on Diaz's failure to strictly comply with OCGA § 17-16-8 without explaining how it was prejudiced by Diaz's failure to provide the missing information. Diaz's trial counsel argued that the State already possessed all of the information about Diaz's nephew because he was an occupant of the vehicle during the traffic stop and the State had his identification card and date of birth.

The trial court asked the State, "what you're essentially complaining of is we didn't get information from the defense that we had in our possession?" The State

---

[2] The State made the same motion to exclude testimony from two other defense witnesses, but that motion was denied by the trial court.

responded affirmatively, explaining, "we are playing by two different sets of rules here when I'm turning over witness names, witness addresses, witnesses's date of birth . . . I complied with the discovery statute . . . [and] I have to deal with a witness list that is incomplete."[3]

The trial court granted the State's motion to exclude Diaz's nephew's testimony, specifically finding that Diaz acted in bad faith in failing to give the State any information so that they could contact Diaz's nephew and not providing the State with his date of birth so the State could check his criminal history.

Regardless whether the State provided Diaz with his nephew's birth date,[4] the trial court did not require the State to show prejudice as required by OCGA § 17-16-6 when ruling on the State's motion to exclude Diaz's nephew's testimony. "Without a basis to conclude that the State would be prejudiced unless the witness' testimony was excluded, the trial court abused its discretion by excluding [Diaz's nephew] as a defense witness." *Hill v. State*, 232 Ga. App. 561, 563 (502 SE2d 505) (1998). See

---

[3] Interestingly, we note that the State did not provide the dates of birth for any of its witnesses on its witness lists.

[4] If it was Diaz's nephew's birth date, then he was not required to provide it to the State because the State had already furnished the information to Diaz. See *Webb v. State*, 300 Ga. App. 611, 614 (685 SE2d 498) (2009); see also OCGA § 17-16-10.

9

*Mitchell v. State*, 326 Ga. App. 899, 901 (1) (a) (755 SE2d 308) (2014); see also

*Webb*, 300 Ga. App. at 614.[5]

Nevertheless, exclusion of this testimony was harmless in light of the overwhelming evidence of Diaz's guilt. The victim testified that he purchased the tractor in 2013. Diaz's purported bill of sale for the tractor is dated 2008, but a manager for Sunbelt rentals testified that not only did it own the tractor at that time, the tractor was located in Louisiana. When the tractor was recovered, a receipt made out to the victim's company was located on the floorboard. Additionally, Diaz worked for the victim after the tractor was stolen, but denied that he was the person charged with the crime until he called the victim to ask him to drop the charges. Accordingly, the exclusion of the witness' testimony was harmless error. See *Riley v. State*, 278 Ga. 677, 683 (4) (604 SE2d 488) (2004); see also *Blair v. State*, 273 Ga. 668, 669 (4) (543

---

[5] Because of our conclusion that the trial court abused its discretion in excluding the testimony we need not address Diaz's contention that his counsel rendered ineffective assistance for failing to comply with OCGA § 17-16-6.

SE2d 685) (2001); *Clark v. State*, 271 Ga. App. 534, 536 (2) (610 SE2d 165) (2005).

*Judgment affirmed. McMillian, J., concurs. McFadden, P. J., concurs specially.**

**\* DIVISION 2 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**

# In the Court of Appeals of Georgia

A18A1394. DIAZ v. THE STATE.

MCFADDEN, Presiding Judge, concurring specially.

I agree that the trial court erred by excluding the testimony of appellant Hipolito Diaz's nephew, Emilio Diaz. And I agree that the error was harmless — but not because the evidence of guilt is overwhelming. The evidence — while sufficient to sustain Diaz's conviction — was entirely circumstantial.

Excluding the testimony of Emilio Diaz was harmless error because Emilio Diaz was not involved in the purchase of the Bobcat. That was appellant Diaz's stepson. And the stepson did testify at trial.

So I concur fully in Division 1 of the majority opinion and specially in Division 2.

2

As the majority observes, in his witness list, appellant Diaz stated that he expected that Emilio Diaz would testify that he "was present with [appellant Diaz] at the time that the Construction Equipment was offered and later purchased," and would testify about "how the Bobcat was offered for sale to [appellant] Diaz and later on purchased by [appellant] Diaz." But the testimony at trial of appellant Diaz and his stepson did not bear out this expectation.

At trial, appellant Diaz testified that Emilio Diaz was his nephew and Heriberto Farias was his son. (Farias later clarified in his testimony that he is Diaz's stepson.) Appellant Diaz testified that it was his son Farias — not his nephew — who was involved in the purchase of the Bobcat. Appellant Diaz testified that Farias informed him that the Bobcat was for sale; that appellant Diaz and his wife met the seller to inspect the Bobcat; and that the next day Farias took the cash to the seller and purchased the Bobcat. Farias himself testified, confirming appellant Diaz's testimony and stating that he had met the seller when he stopped at a QuikTrip where construction workers gathered; that the seller told him about the Bobcat; that Farias told the seller that he would consult his stepfather; that Farias introduced Diaz to the seller; that Diaz gave him the money to purchase the Bobcat; and that he made the purchase on Diaz's behalf.

At the motion for new trial hearing, trial counsel's testimony, appellate counsel's questions, and the assistant district attorney's argument showed that they confused Heriberto Farias with Emilio Diaz, referring to Emilio Diaz as appellant Diaz's son. This confusion explains why trial counsel testified and appellate counsel argued that Emilio Diaz was an important witness because he had brokered the sale and witnessed the purchase. But the trial testimony was that Farias was the person who had done these things. And Farias testified at trial.

Appellant Diaz acknowledges that he testified that Emilio Diaz was his nephew. But, he argues, this was due to a language barrier, and Emilio Diaz is actually his son. The trial transcript does not support this argument.

Appellant Diaz testified at trial in English, although the trial court had provided the services of a certified interpreter.[1] Trial counsel instructed appellant Diaz that if at any time he did not understand the questions of trial counsel or of the assistant

---

[1] The trial court questioned appellant Diaz's failure to request the services of an interpreter until trial, given that he had already appeared at multiple proceedings without one. Nonetheless, the trial court conducted a hearing to determine whether appellant Diaz spoke English well enough to particpate fully in the proceeding in accordance with *Ramos v. Terry*, 279 Ga. 889 (622 SE2d 339) (2005), and the Rules for the Use of Interpereters for Non-English Speaking and Hearing Impaired Persons.**«V4. 2-10; see particulary 9-10»** In an abundance of caution, the court granted Diaz's request and provided a certified interpreter. **«V4. 10-11»**

4

district attorney, he should let them know and they would rely on the interpreter. «**V6. 34-35**» Counsel stressed to appellant Diaz that "[t]his [was] real important." «**V6. 35**»

Then the following examination occurred:

> **Q:** Okay. And does your son work for you?
> **A:** Yes.
> **Q:** What's his name?
> **A.** Heriberto.
> **Q:** Heriberto, okay. How about your wife, does she work for you?
> **A:** Yeah, she – she do all the paperwork. «**V6. 37-38**»

Later, the following examination occurred.

> **Q:** Okay. Heriberto's your son, right?
> **A:** Yes
> **Q:** Emilio Diaz is your nephew, right?
> **A:** Yes. «**V6. 39**»

Morever, even if Emilio Diaz had witnessed Farias's purchase of the Bobcat, his testimony merely would have been cumulative of Farias's testimony. The exclusion of what would have been cumulative evidence is harmless. *Breedlove v. State*, 291 Ga. 249, 251 (3) (728 SE2d 643) (2012); *Brown v. State*, 268 Ga. App. 24, 27-28 (2) (601 SE2d 405) (2004) ("the exclusion of what clearly would have been cumulative evidence was certainly harmless") (citation and punctuation omitted); *Pope v. State*, 178 Ga. App. 148, 148-149 (1) (342 SE2d 330) (1986) ("Excluding evidence which is merely cumulative is not reversible error.") (citation omitted).

Under these circumstances, appellant Diaz has failed to show that the exclusion of Emilio Diaz's testimony harmed his case. "(T)o prevail on appeal, an appellant must show harm as well as error in the exclusion of evidence." *Adams v. State*, 344 Ga. App. 159, 164 (2) (809 SE2d 87) (2017) (citation and punctuation omitted). For these reasons I agree with the majority that Diaz's conviction must be affirmed.