**March 11, 2026**

# In the Court of Appeals of Georgia

A25A1800. IN THE INTEREST OF T. K., et al.

DOYLE, Presiding Judge.

The mother of Ty. K. and Tr. K. appeals from the juvenile court's order finding the children to be dependent and awarding custody to the Berrien County Department of Family and Children Services ("the Department"). The mother alleges that the Department failed to present clear and convincing evidence that the children were dependent or that she should not retain legal custody. For the reasons that follow, we affirm.

"On appeal from an order finding a child to be a dependent child, we review the juvenile court's findings of dependency in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and

convincing evidence that the child is dependent." *In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018) (punctuation omitted). See also OCGA § 15-11-180 ("The petitioner shall have the burden of proving the allegations of a dependency petition by clear and convincing evidence.").

So viewed, the record shows that on July 10, 2024, the Department filed a complaint as to the children, alleging that they were dependant as to the mother because she tested positive for methamphetamine while at a hospital seven days earlier. The complaint stated that around April 2024, the mother let the children live with S. S., their paternal grandmother, but she did not have formal legal guardianship of the children. It also stated that Ty. K. had been taken into custody of the Department on two prior occasions (in 2015 and 2021), the second occasion also resulting in Tr. K. being taken into custody. Both of the prior occasions were based in part on the mother's and deceased father's positive drug screens. The complaint also stated that the mother was living in her vehicle or in unsafe housing, and the Department had not been able to locate her since she had left the hospital.

The complaint alleged that it would be contrary to the children's best interests for them to remain in the mother's home because she could not be located, had tested

positive for methamphetamine, was reported to be living in unsafe conditions, and could retake custody of the children from S. S. The trial court issued a temporary order that the children be taken into custody of the Department, noting the facts as alleged in the complaint and also stating that the children could not remain with S. S. because her husband was alleged to have molested a step-daughter at some unknown time.

Thereafter, the Department placed the children in separate foster homes and prepared a non-reunification case plan on the basis that the mother had unrehabilitated drug dependency issues, unstable housing, and no means to provide for herself or the children. The plan stated that the children were taken because "[d]ifficulty in locating the family led to emergency pickup." Additionally, the mother had admitted to "being in a [domestic violence] relationship," had tested positive for "meth and amphetamines," and could not provide safe supervision or housing stability.

After several continuances of the scheduled preliminary protective hearing, the Department filed a dependency petition in February 2025, alleging that the mother had tested positive at a hospital and told staff not to notify the Department. Per the

petition, the mother was living at a residential drug-treatment facility. A consent preliminary protective hearing was held in February 2025, after which the juvenile court entered an order, finding probable cause to believe that the children were dependent as alleged in the petition.

On February 21, 2025, only the mother and S. S. testified at the dependency hearing. The mother testified that her husband (the children's father) died in 2022, and after the July 2024 positive drug screen, she entered a short-term detox facility in October 2024, before entering the residential treatment facility. She testified that she previously spent a year in a residential treatment facility from 2022 to 2023 due to her 2021 case with the Department. The mother admitted that the current case was opened in July 2024, after she tested positive for methamphetamine. She also admitted that the first time Ty. K. had been taken into care was 2016, prior to Tr. K.'s birth, and the mother admitted both prior dependency cases were for her substance abuse.

With regard to the current case, the mother admitted that she was supposed to go to meetings as a form of relapse prevention, but she failed to go because living on her own after leaving the facility was overwhelming. When asked what led to her

relapse, she stated that she was still mourning the death of her husband. After leaving the facility in 2023, the mother initially received housing assistance but began to have difficulty with bills around January 2024. To save money, she moved in with her brother, and his home was small and not as suitable for the children. As a result of her issues with providing housing and income, she and S. S. agreed to have the children live with S. S. The mother denied having relapsed while the children were in her care. She testified that the children always were fed and had a safe place to sleep when they lived with her, and she denied that the children ever slept in a vehicle.

The mother testified that she was drug tested routinely at the current facility, and although there apparently was an issue with her prescribed medication causing a "faint positive," there was otherwise no evidence presented of a positive drug screen outside of the July 2024 incident. The mother testified that she would be in-treatment for six months, but in March, she would be able to work off-campus and was applying for housing. She had visited with the children at least three times as allowed by the program.

S. S. testified that at the time they were taken into custody in July 2024, the children had been living with her since April 2024 because the mother did not have

stable housing. She testified that the children were doing well and enjoyed living with her, and Ty. K. attended his normal public school. S. S. denied that the mother ever came to the house under the influence of drugs. S. S. also denied that the children ever told her that they had seen the mother use drugs, that they had slept in a vehicle while in the mother's care, or that they had witnessed the mother in a domestic violence situation.

S. S. testified that when the Department came and took the children from her care, Ty. K. was extremely upset. She testified that the Department told her that she needed legal guardianship for the children to continue to stay with her. S. S. explained that there had been no need for her to have formal guardianship when the children had been placed with her during the mother's other dependency cases. S. S. denied that the mother had ever tried to take the children from S. S.'s care while the mother was intoxicated, and S. S. frequently took the children to visit the mother.

On cross-examination, the Department asked S. S. about sexual abuse allegations made against her husband, T. S.; S. S. acknowledged the allegation, blaming it on her daughter's then-husband's coercion in retaliation for S. S. and T. S. suggesting that the daughter should leave the then-husband. On redirect, S. S.

stated that the allegation was from over 35 years ago, and the children had been placed with her twice by the Department despite that.

The juvenile court issued an order finding that the mother had admitted to a positive drug test for methamphetamine while in the hospital, that she was in a residential substance abuse program, and that the children had previously been in care of the Department. The court found that the cause of the dependency was "the mother's unrehabilitated substance abuse," that the children were dependent as defined by OCGA § 15-11-2(22)(A) (a "dependent child" is one who "has been abused or neglected and is in need of the protection of the court"), and that the children were neglected or lacked supervision as to the mother. The court found that no services were required prior to removal of the children because the Department previously had provided the mother with services on two occasions, citing OCGA § 15-11-146(d). The mother has not challenged this last determination.

1. The mother first argues that the Department failed to introduce clear and convincing evidence that the children were dependent because they were in safe and stable housing with S. S.

Again, we review the juvenile court's order in the light most favorable to juvenile court's ruling

> to determine whether any rational trier of fact could have found by clear and convincing evidence that the [children were] deprived. In making this determination we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of [children] whose well-being is threatened.

*In the Interest of R. D.*, 346 Ga. App. at 259(1) (punctuation omitted). "[C]lear and convincing evidence is an intermediate standard of proof which is greater than the preponderance of the evidence standard ordinarily employed in civil proceedings, but less than the reasonable doubt standard applicable in criminal proceedings." *In the Interest of K. M.*, 344 Ga. App. 838, 847(2) (811 SE2d 505) (2018) (punctuation omitted). In the event that "the court's judgment is based upon a stated fact for which there is no evidence, it should be reversed." *In the Interest of V. G.*, 352 Ga. App. 404, 409(1)(a) (834 SE2d 901) (2019) (punctuation omitted).

"Under the most recent version of Georgia's Juvenile Code, the juvenile court may place a minor child in the protective custody of the Department where the State

shows, by clear and convincing evidence, that the child is a dependent child." *In the Interest of T. S.*, 348 Ga. App. 263, 269 (820 SE2d 773) (2018) (punctuation omitted). Pursuant to OCGA § 15-11-2(22)(A), a dependent child is one who, inter alia, "has been … neglected and is in need of the protection of the court." "Neglect" is defined as "[t]he failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals[.]" OCGA § 15-11-2(48)(A) (2024).

Moreover, the record must contain "evidence of present dependency, not merely past or potential future dependency." *In the Interest of K. M.*, 370 Ga. App. 390, 394 (897 SE2d 521) (2024). Additionally, "a finding of parental unfitness is essential to support an adjudication of present dependency." *In the Interest of H. B.*, 346 Ga. App. 163, 165(1) (816 SE2d 313) (2018). This Court has defined "unfitness" on the part of a parent as "either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." *In the Interest of A. J. H.*, 325 Ga. App. 848, 852 (755 SE2d 241) (2014) (citation modified).

At the hearing, the mother conceded that she had tested positive for methamphetamine in July 2024, which triggered the Department's decision to take the children into emergency care. The mother also conceded that she was in a residential treatment facility, so she was unable to take physical custody of the children. This was the third time that the Department had taken Ty. K. into custody and the second time the Department had taken Tr. K. into custody based in part on the mother's drug use, which is evidence of long-term unrehabilitated drug use beginning in 2016. See *In the Interest of J. L.*, 269 Ga. App. 226, 229 n.6 (603 SE2d 742) (2004) (collecting cases regarding the level at which parental drug use constitutes sufficient evidence to support a finding of parental unfitness and, thus, dependency). Compare *In the Interest of K. M.*, 370 Ga. App. at 395–96 (holding that the record did not support a finding that the parent's drug use was excessive or established harm to the children).

The record does show laudable behavior by the mother with her decision to leave the children in the day-to-day care of S. S. when the mother found herself unable to provide safe, stable housing around April 2024. Nevertheless, this testimony also supported the juvenile court's finding of neglect and lack of supervision as to the

mother because she had not been able to provide housing or material support for the children from around April 2024, to the hearing in February 2025. See, e.g., *In the Interest of T. S.*, 348 Ga. App. at 269 (explaining that custody may be removed "if the dependency resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child *or by what is tantamount to physical ... incapability to care for the child*" (emphasis supplied)). Compare with *In the Interest of A. W.*, 340 Ga. App. 406, 413–14 (1) (b) (797 SE2d 655) (2017) (reversing juvenile court dependency order because the record evidence of an isolated six-week period of methamphetamine use without other evidence of neglect was insufficient). Finally, although we agree that the record lacks clear and convincing evidence that the children were in danger while in the care of S. S., based on the testimony and considering the applicable standard of review, the mother has not established error.

2. The mother also argues that even if the remainder of the determination is supported by clear and convincing evidence, the trial court should have allowed her to maintain legal custody of the children. Again, while we agree with the mother that the record shows the children were well cared for in S. S.'s physical custody, the

11

court's removal of the children from *the mother's* legal and physical custody was supported by clear and convincing evidence as explained in Division 1. See *In the Interest of T. S.*, 348 Ga. App. at 269. Accordingly, this argument does not establish error as to the dependency order.

*Judgment affirmed. Markle and Padgett, JJ., concur.*