309 Ga. 736
FINAL COPY

S20A0826.  PARKER v. THE STATE.

PETERSON, Justice.

Vraimone Parker appeals his convictions for malice murder and other offenses, following the shooting death of his aunt's boyfriend, Kwame Chubbs, and the non-fatal shooting of his aunt, Eva Robinson.[1] At trial, the jury rejected Parker's defense that he was not guilty by reason of insanity and also rejected the option of

---

[1] Chubbs was killed on September 12, 2017. In December 2017, a Fulton County grand jury returned an indictment charging Parker with malice murder, four counts of felony murder, two counts of aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, and possession of a firearm having previously been convicted of a felony involving the use or possession of a firearm. A jury found Parker guilty of all charges at an August 2018 trial. On August 10, 2018, the trial court sentenced Parker to serve life in prison without the possibility of parole for malice murder, a 20-year consecutive term of imprisonment for the aggravated assault of Robinson, and a 15-year consecutive term for possession of a firearm having previously been convicted of a felony involving the use or possession of a firearm; the other counts merged or were vacated by operation of law. Parker filed a motion for new trial on August 13, 2018. Parker amended the motion on June 4 and July 29, 2019. Following a hearing, the trial court denied the motion in an order entered on September 10, 2019. Parker filed a timely notice of appeal, and the case was docketed to this Court's April 2020 term and submitted for a decision on the briefs.

finding him guilty but mentally ill. Parker argues on appeal that the trial court erred by failing to grant a mistrial after a detective commented on Parker's silence; failing to grant a mistrial after the trial court's own expert witness testified that Parker knew what he was doing at the time of the shooting; and imposing a discovery sanction that precluded Parker's expert witness from offering particular testimony. He also argues that his trial counsel was ineffective in handling issues related to Parker's status as a convicted felon. We conclude that the trial court did not abuse its discretion in denying the motions for mistrial; Parker has shown no harmful error as a result of the discovery sanction; and Parker has not demonstrated that he was prejudiced by any deficient performance of counsel, even where counsel's performance is considered along with the effect of the discovery sanction. We therefore affirm.

The trial evidence in the light most favorable to the verdicts showed the following. Chubbs lived in Fulton County with his sister, Sonda Franklin, and Chubbs's estranged girlfriend, Robinson. On

the afternoon of September 11, 2017, Parker, Robinson's nephew who recently had arrived from Florida, came to the home to visit.

Parker smoked marijuana and acted strangely that day. Parker was "seeing stuff" that was not there, jumping from those apparent hallucinations, and crying. Franklin claimed that she declined to smoke Parker's marijuana because it did not look like the marijuana she usually smoked, although Robinson testified that Franklin and Parker regularly shared the same marijuana. Robinson did not smoke any of Parker's marijuana. Parker spent the night at Franklin's house.

The following morning, Chubbs told Franklin when he left for work that he was going to call and check on her because Parker had been "acting weird to" him. Parker continued to act strangely that day, apparently hallucinating and claiming that five other people were "all at him at one time" and "the other Vraimone was telling him to kill himself." Parker had a gun, and Franklin and Robinson exchanged text messages about attempting to take it away. Robinson contacted Parker's mother, sister, and cousin, seeking help

dealing with Parker.

At some point that day, Parker and Robinson were on the front porch. A passing car "spooked" Parker, and he went inside. Chubbs arrived home from work, and Franklin called him back to her room and reported that Parker's mother was on her way to get Parker. Chubbs asked Franklin for her gun, but she declined to give it to him. Chubbs left the room, and Franklin heard gunshots less than a minute later. Franklin ran out of her room and saw Parker shoot Chubbs multiple times; Parker looked directly at Franklin as he shot Chubbs in the head. Still out on the porch, Robinson felt a bullet graze her leg. Chubbs was shot at least six times and died from a gunshot wound to the head.

That night, police found Parker walking in the middle of a highway nearby, talking on a cell phone. Parker had a pistol in his waistband that later was determined to have fired the bullets recovered from Chubbs's body. Parker's pistol had three separate safeties. An arresting officer testified that he observed nothing out of the ordinary in Parker's behavior at the time of his arrest.

At trial, the State introduced evidence of two prior felony convictions of Parker in Ohio: a conviction for aggravated robbery involving the use of a firearm, and a conviction for illegal conveyance of a weapon or other prohibited item onto the grounds of a specified government facility.

The jury heard testimony about Parker's mental health from a State expert, a defense expert, and an expert the trial court appointed to testify as a friend of the court under OCGA § 17-7-130.1. The defense expert, Adriana Flores, testified that Parker was psychotic at the time of the offense and likely met the criteria for schizoaffective disorder bipolar type. Dr. Flores testified that marijuana use did not explain Parker's psychosis given that his psychotic symptoms began well before the shooting and continued for a period of time after his arrest. The State's expert, Matthew Norman, testified that Parker was psychotic on the day of the shooting but his psychosis was best explained by substance abuse, not schizoaffective disorder. The trial court's expert, David Halverson, testified that Parker did not suffer from a chronic

psychotic illness but, rather, had experienced cannabis-induced psychotic disorder.

1. Although Parker does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the evidence presented at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. Parker argues that the trial court erred by failing to grant his request for a mistrial after a State's witness improperly commented on Parker's silence.

At trial, a prosecutor asked a detective what she observed when she served Parker with warrants for his arrest. The detective replied, "He didn't speak. He didn't say anything —." The defense

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 399 (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

made a motion for a mistrial on the basis that the remark was an improper comment on Parker's silence. The motion was denied, but the trial court instructed the jury to disregard the comment.

"Whether to grant a mistrial is within the trial court's discretion, which an appellate court will not disturb unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." *Jones v. State*, 305 Ga. 750, 755 (3) (827 SE2d 879) (2019) (citation and punctuation omitted).

> Here, even assuming the testimony was a comment on [Parker's] silence, the comment was non-responsive and made in passing. Further, juries are presumed to follow curative instructions in the absence of proof to the contrary. [Parker] has provided no evidence that the jury disregarded the court's instruction and therefore this allegation of error cannot be sustained.

Id.

3. Parker argues that the trial court committed reversible error when it failed to grant his motion for mistrial after the trial court's expert witness offered his conclusion on Parker's mental state and culpability in the presence of the jury. We disagree.

Although this enumeration of error primarily concerns the

testimony of the court's expert witness, we begin with some background about the testimony of the defense expert who testified first. On direct examination, the defense expert, Dr. Flores, began to testify that Parker was psychotic before, during, and after the offense. Dr. Flores added that she concluded Parker was "unable to differentiate —" before being interrupted by the State's objection that her testimony was "getting to the ultimate issue" in the case. In response to the State's objection, the defense argued that its witness, Dr. Flores, should be able to testify that Parker did not know right from wrong, one of the two bases for proving insanity under Georgia law. See *McElrath v. State*, 308 Ga. 104, 106 (1) (b) (839 SE2d 573) (2020). The trial court ruled that the experts could not testify on that issue. Nonetheless, on cross-examination by the State, Dr. Flores briefly suggested, before stopping herself, that Parker met one of two possible definitions of insanity under Georgia law. In particular, when asked by the State to recite the legal standard for insanity in Georgia, Dr. Flores responded that it had "two prongs." She explained that "[o]ne prong" is that the person

"was laboring under a delusion" that "overmastered their will," adding, "[t]he other one, which is the one that I am saying he meets, is that the individual was — I thought I couldn't testify about it." The prosecutor responded, "Well, I didn't ask you about it. But you testified anyway, didn't you?" Defense counsel objected to the prosecutor's response as argumentative and on the basis that the prosecutor had failed to allow Dr. Flores to complete her answer. The trial court stated in a bench conference that Dr. Flores had violated the court's order by "indicat[ing] to the jury [which] prong that she was moving under and what her finding was" and overruled the defense objection. No curative instruction was requested by either party or given by the trial court.

The trial court's expert, Dr. Halverson, testified later. When asked by the prosecutor whether Parker was experiencing psychosis at the time of the shooting, Dr. Halverson testified that Parker had been psychotic, but not delusional, then added that Parker "was not so impaired that he didn't know what he was doing at the time —" before being cut off by the trial court when Parker's counsel objected.

Parker moved for a mistrial. The trial court denied the mistrial and asked whether the defense wanted any type of curative instruction. Defense counsel responded that the defendant did not waive his motion for a mistrial but requested that the court instruct the jury that Dr. Halverson "should not have testified to what he just said and that they should disregard it, that the issue of whether a person is criminally responsible or not lies within the exclusive province of the jury, regardless of any testimony to the contrary, regardless of any testimony to that issue." The trial court then instructed the jury as follows:

> Neither this witness nor any witness should testify to what is considered the ultimate issue for the jury to determine, and that is whether or not the defendant was criminally responsible at the time he committed the alleged act.
> Any testimony by this witness in that regard in his last response should be totally disregarded by you. Experts can testify as to their diagnoses and their observations, but they are not to testify as to what mental intent, for instance, a person has at the time of committing a crime. That is exclusively for the jury to determine after hearing all of the evidence in the case.
> So I instruct you to disregard any testimony by this witness or any other with respect to whether or not a person — the defendant was acting at the time of the

incident with criminal intent or not to commit the act. The defense did not object to the form of the instruction.

Again, whether to grant a mistrial is a decision within the trial court's discretion that will not be reversed unless it is essential to the preservation of the right to a fair trial. See *Jones*, 305 Ga. at 755 (3). Whether or not the remark of Dr. Halverson to which Parker objected was admissible,[3] we conclude that Parker has not shown that the trial court abused its discretion in not granting a mistrial. Here, the testimony in question was unsolicited by the State, which had merely asked if Parker was experiencing psychosis at the time

---

[3] The District Attorney, but not the Attorney General, argues that the testimony was admissible. We note that OCGA § 24-7-704 (b), which is similar to a federal rule of evidence, see Fed. R. Evid. 704 (b), provides that "[n]o expert witness testifying with respect to the mental state or condition of an accused in a criminal proceeding shall state an opinion or inference as to whether the accused did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto[,]" as "[s]uch ultimate issues are matters for the trier of fact alone." The Eleventh Circuit has held under the federal rule that although psychiatric testimony may include the expert's diagnosis, the characteristics of the particular mental disease or defect, and the expert's opinion as to the defendant's mental state and motivation at the time of the alleged crime, such testimony may not opine on whether the defendant appreciated the wrongfulness of his actions. See *United States v. Manley*, 893 F2d 1221, 1223-1225 (11th Cir. 1990).

of the shooting. The witness's remark was cut off promptly, and the trial court instructed the jury to disregard it. Although Parker argues that the instruction was too unclear for the jury to know what it was supposed to disregard,[4] the corrective instruction referenced the witness's "last response." And the trial court instructed the jury, as Parker requested, that Dr. Halverson should not have testified as to whether Parker was "criminally responsible" at the time of the shooting, and Parker raised no objection to any of the language used by the trial court. To the extent that the jury was confused as to whether it could consider Dr. Halverson's brief remark that Parker "knew what he was doing" at the time of the shooting, any harm to Parker from that testimony was mitigated by the defense expert's (also brief) remark suggesting that Parker met the definition of

---

[4] In particular, Parker argues that the curative instruction was confusing because it told the jury that witnesses cannot testify about "criminal intent," words not used by Dr. Halverson, but did not tell the jury that it could not consider Dr. Halverson's statement as to whether Parker had mental capacity to distinguish between right and wrong. Parker contends that the curative instruction was confusing, particularly given that the court ultimately instructed the jury that "[c]riminal intent does not mean an intention to violate the law or to violate a penal statute, but means simply the intention to commit the act that is prohibited by the statute."

insanity, especially given that the trial court offered no curative instruction to that remark. And the trial court specifically instructed the jury prior to Dr. Halverson's testimony that, by identifying him as the trial court's expert, the court was suggesting nothing about his credibility or the weight the jury should give his testimony. The trial court did not abuse its discretion in denying a mistrial. See *United States v. Signore*, 780 Fed. Appx. 685, 691 (11th Cir. 2019) (even if expert's testimony defining Ponzi scheme as a "type of investment fraud" were improper under Federal Rule of Evidence 704 (b), trial court did not err in denying mistrial where expert did not directly state that any specific defendant engaged in fraud or acted with intent to deceive and trial court gave multiple curative instructions); *Jones*, 305 Ga. at 755 (3) (no reversible error in denying mistrial, as "the comment was non-responsive and made in passing," and "juries are presumed to follow curative instructions in the absence of proof to the contrary"); *Torres v. State*, 272 Ga. 389, 390-391 (2) (529 SE2d 883) (2000) (even assuming that admission of expert testimony that appellant's drug dealing evidenced his lack of

an intellectual disability was error, no error in denial of motion for mistrial because neither the witness nor the prosecution intentionally injected appellant's character in issue, and the trial court struck the testimony, gave a curative instruction to the jury to disregard it, and rebuked the prosecutor in the presence of the jury).

4.      Parker argues that the trial court also erred when it, as a discovery sanction, precluded Dr. Flores from testifying about one of her meetings with Parker. We see no reversible error.

Before the August 2018 trial, the trial court ordered Dr. Flores to produce a more complete expert report pursuant to OCGA § 17-16-4 (b) (2)[5] by July 17, 2018. Dr. Flores prepared a supplemental

---

[5] That statute provides:
    The defendant shall within ten days of timely compliance by the prosecuting attorney but no later than five days prior to trial, or as otherwise ordered by the court, permit the prosecuting attorney at a time agreed to by the parties or as ordered by the court to inspect and copy or photograph a report of any physical or mental examinations and of scientific tests or experiments, including a summary of the basis for the expert opinion rendered in the report, or copies thereof, if the defendant intends to introduce in evidence in the defense's case-in-chief or rebuttal the results of the physical or mental examination or scientific test or experiment. If the report is oral or partially oral, the defendant shall reduce all relevant and material oral portions of such report

report dated July 16, 2018. Dr. Flores later met with Parker for a second time.[6] After she mentioned this second meeting in her testimony, the State objected to her testifying about the second meeting on the basis that it had not been included in her expert report. The trial court agreed with the State, ruling that Dr. Flores could not testify about the second meeting, at least unless the State brought it up on cross-examination, because the failure to advise the State of facts the expert gathered prior to compiling her report violated the discovery statute and the court's order.

OCGA § 17-16-6 provides for exclusion of evidence as a sanction for failures of both the State and defendants to comply with their statutory discovery obligations in a criminal case.

> Exclusion of evidence pursuant to OCGA § 17-16-6 is a
> particularly harsh sanction that should be imposed only
> where there is a showing of bad faith by the party that
> has failed to comply with its discovery obligation and

to writing and shall serve opposing counsel with such portions no later than five days prior to trial. Nothing in this Code section shall require the disclosure of any other material, note, or memorandum relating to the psychiatric or psychological treatment or therapy of any defendant or witness.

[6] The trial court entered an order requiring jail staff to permit the second visit between Dr. Flores and Parker.

> prejudice to the other party. We review a trial court's order excluding evidence under OCGA § 17-16-6 for an abuse of discretion. We review for clear error the trial court's factual findings under the statute as to bad faith and prejudice.

*State v. Bryant*, 307 Ga. 850, 853 (1) (838 SE2d 855) (2020) (citations and punctuation omitted).

Parker argues that the trial court erred in ruling that Dr. Flores could not testify about her second meeting with him, because the court did not make findings of prejudice and bad faith pursuant to OCGA § 17-16-6. But to obtain reversal based on any such error, Parker must show that he was harmed by the ruling. See *Green v. State*, 307 Ga. 171, 178 (4) (835 SE2d 238) (2019) (considering whether exclusion under OCGA § 17-16-6 was harmful). This Parker cannot do. Although Parker argues that the trial court's exclusion of Dr. Flores's testimony regarding her second meeting with him "conveyed to the jury that Dr. Flores's opinion was based on less data than it actually was based on," the jury in fact heard that Dr. Flores had two meetings with him. After the State sought to exclude Dr. Flores's testimony about the second meeting, Parker elicited Dr.

Flores's testimony outside the presence of the jury that the second meeting involved her asking him questions based on the other experts' reports and that the second meeting did nothing to change her opinion.[7] Parker offers no argument about how this additional testimony might have changed the outcome of the case.

To the extent that Parker means to argue that the ruling prevented Dr. Flores from telling the jury something more about the substance of the second meeting, his argument fails because he has not shown what additional testimony Dr. Flores would have offered had the trial court ruled differently. Parker made no attempt to make the substance of any such additional testimony known to the trial court — via the expert's proffer or otherwise — and thus this argument is not subject to ordinary appellate review. See *Walker v. State*, 301 Ga. 482, 487 (3) (801 SE2d 804) (2017) (citing OCGA § 24-1-103 (a) (2)). And this failure to make the substance of any

---

[7] Parker's counsel prefaced her question to Dr. Flores by explaining to the trial court that if it were "inclined to refuse to allow her to testify about [the second meeting], then I guess we need to know what the difference is between" what was discussed at the two meetings.

additional testimony known to the trial court dooms any claim of plain error, as Parker cannot show that there is a reasonable probability that, but for the trial court's discovery sanction, the outcome of the trial would have been more favorable to him. See id. at 488 (3). Parker cannot obtain reversal of his convictions on this ground.

5. Finally, Parker argues that his trial counsel was ineffective in several respects related to the State's introduction of evidence that he was a convicted felon at the time of the shooting. We conclude that Parker has not shown that any deficient performance of counsel prejudiced his defense.

Parker was charged with one count of possession of a firearm by a convicted felon and one count of possession of a firearm by someone previously having been convicted of a felony involving the use or possession of a firearm. As noted above, the State introduced at trial two exhibits showing Parker's prior felony convictions. State's Exhibit 120 was a certified conviction for aggravated robbery, including the specification that Parker had used a firearm

in committing the offense. The exhibit also showed that Parker had been indicted for two counts of kidnapping and one count of aggravated burglary and that those counts had been nolle prossed. State's Exhibit 121 showed that Parker was convicted of illegal conveyance of weapons or prohibited items onto the grounds of one of several specified government facilities; the exhibit included an indictment alleging that he had conveyed a "drug of abuse" into the facility, and a sentencing order showing that he had received a 30-month prison sentence.

Parker argues that trial counsel performed deficiently by failing to stipulate to his status as a convicted felon and that he previously had been convicted of a felony involving the use or possession of a firearm. Parker argues that counsel at least should have sought redaction of irrelevant allegations of conduct for which Parker was not convicted, specifically the two counts of kidnapping and one count of aggravated burglary in State's Exhibit 120.

To prevail on a claim of ineffective assistance of counsel, Parker must show both that his trial counsel's performance was

deficient and that this deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "To establish deficient performance, [Parker] must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in the light of all of the circumstances. *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). To establish prejudice, Parker must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Parker must prove both prongs of the *Strickland* test, and if he fails to prove one prong, "it is not incumbent upon this Court to examine the other prong." *Smith*, 296 Ga. at 733 (2) (citation and punctuation omitted). In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous. See id. We conclude that even if trial counsel performed deficiently in failing to stipulate to Parker's status as a convicted

felon who had committed a felony involving a firearm, Parker has not shown a reasonable probability of a different outcome if counsel had so stipulated.

We have held that a trial court may abuse its discretion in failing to allow a defendant to stipulate to his status as a convicted felon "where a defendant's prior conviction is of the nature likely to inflame the jury's passions and raise the risk of a conviction based on improper considerations, and . . . the purpose of the evidence is solely to prove the defendant's status as a convicted felon." *Moore v. State*, 306 Ga. 532, 534 (2) (b) (832 SE2d 384) (2019) (citation and punctuation omitted). But this Court has held that even violent crimes, crimes involving firearms, and drug offenses were not likely to inflame the jury's passions in murder cases. See *Stephens v. State*, 307 Ga. 731, 739 (4) (838 SE2d 275) (2020) (trial court did not abuse its discretion when it denied murder defendant's request to stipulate to prior felony conviction for possession of cocaine with intent to distribute); *Moore*, 306 Ga. at 534-535 (2) (b) (conviction for possession of a firearm by a first offender probationer unlikely to

inflame the jury's passions in trial for malice murder, aggravated assault, and other offenses); *Morris v. State*, 297 Ga. 426, 428 (2) (774 SE2d 665) (2015) (prior convictions for aggravated assault and interference with government property were not likely to inflame passions of jury in trial for malice murder, aggravated assault, and other crimes, where evidence of convictions presented included only the name of the crimes and the sentences received).

Parker has not shown that informing the jury that he had been convicted of aggravated robbery and bringing a prohibited item into a government facility, and that he had been charged with kidnapping and aggravated burglary, likely inflamed the passions of the jury, particularly in the light of the nature of the charges and evidence against Parker. The evidence that Parker shot the victim was overwhelming. Indeed, Parker's counsel conceded in her closing argument that Parker shot and killed Chubbs and that one of the bullets he fired hit Robinson in the leg. This makes it particularly unlikely that the evidence of Parker's prior convictions affected the outcome of the trial as to the offenses other than those specifically

predicated on a prior conviction. See *Ballard v. State*, 297 Ga. 248, 252-253 (6) (a) (773 SE2d 254) (2015) (any error in counsel's failure to stipulate to convicted felon status, based on convictions for aggravated assault and burglary, did not result in prejudice given overwhelming evidence of his guilt); *Hill v. State*, 290 Ga. 493, 498 (6) (722 SE2d 708) (2012) (any error in trial court's refusal to permit defendant to stipulate to his status as a convicted felon, based on conviction for aggravated assault, was harmless due to overwhelming evidence of guilt). The prejudicial impact of the kidnapping and burglary charges included in the documents admitted at trial was low, given that the documents showed that Parker had not been convicted of those crimes. Moreover, given that Parker was charged with possession of a firearm having been previously convicted of a felony involving a firearm, even if counsel had offered a stipulation, and the trial court had accepted that stipulation, the jury still would have heard that Parker previously had been involved in a crime involving a firearm.

Parker nonetheless argues that the failure to stipulate was at

odds with his defense that he could not tell the difference between right and wrong on the day of the crime. He argues that allowing the jury to see that he previously had been convicted of a violent crime, including details beyond the mere fact of each conviction, undermined that defense and the opinion of his expert witness. But Parker defended the case against him on the basis that he was criminally insane at the time of the crime as a result of a long-running, chronic mental illness, offering evidence that he manifested symptoms even in childhood. This suggested that any mental illness that Parker may have had at the time of the crimes of which he was convicted here was also present at the time of the earlier crimes; accordingly, the evidence of the earlier crimes had little bearing on whether he suffered from such mental illness. To the extent that the prior convictions could indicate to a jury that Parker was not mentally ill at the time he committed the prior offenses, given that he was found criminally responsible for them, nothing introduced at trial indicated that any mental health defense was raised in the prior proceedings. Thus, there was no reason for

the jury in this case to believe that the factfinders in those prior proceedings considered and rejected such a defense. Accordingly, any inference the prior convictions might support regarding Parker's prior mental health is too speculative and remote to support reversal here.

Parker also argues that informing the jury that he had a drug-related conviction was particularly prejudicial given the opinions of the State and trial court experts that Parker's psychosis was drug-induced. But the evidence was strong that Parker had engaged in illegal drug usage while staying at Franklin's home. Evidence that Parker had possessed drugs at the time of a prior offense did not undermine the testimony of the defense expert that drug usage did not *explain* Parker's psychosis at the time of the shootings in this case. Parker has not shown a reasonable probability that the outcome of his case would have been different if counsel had performed as he now wishes. Our conclusion remains the same even if we consider the prejudice resulting from any deficient performance by counsel cumulatively with any harm caused by the

discovery sanction. See *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020).

*Judgment affirmed. All the Justices concur.*

Decided September 8, 2020.

Murder. Fulton Superior Court. Before Judge Ellerbe.
*Richard A. Grossman*, for appellant.
*Paul L. Howard, Jr., District Attorney, David K. Getachew-Smith, Sr., Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.