**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 8, 2023**

# In the Court of Appeals of Georgia

A23A0477. GREEN v. STATE.

PIPKIN, Judge.

Following a jury trial, Appellant William Darnold Green was convicted of aggravated assault and possession of a firearm during the commission of a felony. On appeal, Appellant argues that the trial court erroneously excluded certain evidence as a consequence of an alleged discovery violation. We agree, and, for the reasons that follow, we reverse the judgments of conviction and remand for a new trial.

1. When viewed in a light most favorable to the verdicts, see *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence adduced below established as follows. In late December 2015, the victim, Talon Green, was living at his grandparents' residence in Decatur, Georgia. Appellant was also

temporarily living at this house, along with his son, Christian.[1] During the last week of the year, a party was held at the residence; by all accounts its was a large, raucous affair, with guests consuming alcohol, smoking marijuana, and gambling. In the days following the party, Appellant became aggravated with Talon, believing that he was disrespecting the house with on-going parties and a continuous stream of guests.

On the morning of December 30, while Appellant, Talon, and Christian were in the garage of the residence, Appellant and Talon got into a "heated" and "intense" exchange of words. Talon testified that, following the confrontation, Appellant pulled a pistol out of his waistband, aimed the firearm at his chest, and shot him. According to Talon, the gun did not go off during a physical confrontation or because the two men were "grappling"; instead, Talon told the jury that Appellant "had the gun at [his] chest, and bang." After being shot, Talon attacked Appellant, and Appellant shot him at least one more time.

The State also presented Christian as a witness. Christian testified that, after the verbal exchange between the two men, Talon attacked Appellant and that it was only after Talon "struck" Appellant that the gun "went off" and "fired off." According to Christian, Talon struck Appellant in the face and tried to choke him, and it was

---

[1] Appellant is Green's uncle; Christian and Green are cousins.

2

during the resulting "tussle" that Appellant was shot; Christian testified that Talon continued to fight Appellant after the initial shot and that additional shots rang out in quick succession. The State impeached Christian with his prior statement to law enforcement that Talon had hit Appellant only after Appellant had aimed the pistol at him. The jury learned that, shortly after the shooting, Christian had told authorities there was a delay between shots and that, after the first shot, Talon had asked Appellant to call for help, but, "in a midst of rage," Appellant had shot him again. Nevertheless, Christian maintained at trial that the shooting was "unintentional."

Appellant testified in his own defense. In his testimony, Appellant recounted that, while he and Talon "did have a few words," it was Talon who became aggressive and punched Appellant in the face "like he was trying to . . . knock somebody out." Appellant testified that the two men fought[2] and that he, Appellant, pulled the gun out of his pocket when Talon began choking him; in response, Talon threw him across the garage, and, Appellant says, it was then that "the gun went off." Appellant told the jury that the subsequent shots occurred after he was thrown; Appellant testified that he was "in the defense mode" and did not "know if [Talon] was trying to jump

---

[2] Appellant testified that Talon was "substantially larger" than Appellant.

3

on [him] or if [Talon] was just coming to attack [him]." Appellant denied pointing the gun at Talon at any time before the shooting.

Like his son, Appellant was impeached with his previous statements to law enforcement. In statements made shortly after the shooting, Appellant told investigators that it was Talon who was armed -- indeed that Talon had tried to scare Appellant with the weapon before the two men started to fight -- and that the gun had gone off while Appellant was attempting to take the gun away from Talon.

Although not enumerated as error, we conclude that the evidence adduced at trial was sufficient to sustain Appellant's convictions. See, e.g., *Lomax v. State*, 319 Ga. App. 693, 694 (1) (738 SE2d 152) (2013).

2. Before trial, the State moved in limine to exclude "a handwritten note that [was] purport[ed] to have been written by [Talon] to [Appellant]." The State complained to the trial court that the defense had not produced the note until the morning of trial despite the parties having engaged in reciprocal discovery. The handwritten note, which Talon ultimately authenticated, states as follows:

> Give Uncle [] William this. I forgive him[,] and I hope he forgives my attitude and smart attitudes. I know you didn't mean to shoot me. Just know out of everything I love you, you fought so hard to be where were [sic] you and your kids. P.S. I [] love you Uncle William.

4

The trial court reserved ruling on the issue.

Later, while cross-examining Talon, the defense brought the note to his attention, and Talon acknowledged that he had written the note in the days following the shooting. When the defense asked to have the note admitted into evidence, the trial court held a bench conference, during which the court expressed surprise that the note -- which had been written at some point between December 30, 2015, and February 16, 2016 -- had not been provided to the State by the time of the October 2017 trial. At the conclusion of the bench conference, the trial court stated that the note "ha[d] some time on it," and ultimately granted the State's motion to exclude the evidence on the basis of "a discovery violation." Now, on appeal, Appellant argues, among other things, that the trial court abused its discretion in this regard.[3] We agree.

"Once a criminal defendant opts into reciprocal discovery, the provisions of OCGA § 17-16-1 et seq. apply to the case, and the trial court has broad discretion to

---

[3] We also agree with Appellant that it is not at all clear that the defense's failure to timely disclose Talon's note was, in fact, a discovery violation given that Talon was the State's witness. See OCGA § 17-16-7 (requiring the production of statements "concerning the testimony of the witness that *the party in possession*, custody, or control of the statement *intends to call as a witness at trial*"). However, we assume for the purposes of this opinion that the note was subject to discovery, and we need not resolve this question or address any possible tension between OCGA § 17-16-4 (b) (1) and OCGA § 17-16-7.

remedy violations of those provisions." (Citations and punctuation omitted.) *Phillips v. State*, 347 Ga. App. 147, 151 (2) (817 SE2d 711) (2018). Specifically, OCGA § 17-16-6 provides, in relevant part, as follows:

> If at any time during the course of the proceedings it is brought to the attention of the court that the defendant has failed to comply with the requirements of this article, the court may order the defendant to permit the discovery or inspection, interview of the witness, grant a continuance, *or, upon a showing of prejudice and bad faith, prohibit the defendant from introducing* the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

(Emphasis supplied.) "Exclusion of evidence pursuant to OCGA § 17-16-6 is a particularly harsh sanction that should be imposed only where there is a showing of bad faith by the party that has failed to comply with its discovery obligation and prejudice to the other party." (Citation omitted.) *Parker v. State*, 309 Ga. 736, 742-43 (4) (848 SE2d 117) (2020). We review the trial court's exclusion of evidence for abuse of discretion. Id. at 743

Here, the trial court excluded the note merely on the basis of its age, without reference to either bad faith or prejudice, and the record does not support a finding of bad faith or prejudice. While the State argued in passing that it was necessarily bad faith for the defense to have failed to turn over the note during reciprocal discovery,

6

the record is thin with respect to the note's history; Talon testified only that he gave the note *to his grandmother*, and the State vaguely alleged -- without any evidentiary support or explanation -- that "the defendant[] [has] had it, his girlfriend has had it, defense witnesses have had it." In short, nothing in the record indicates when the defendant became aware of the note or was able to exercise control over it.[4]

Moreover, even presuming that the mere possession of the note and the passage of time is sufficient to infer bad faith -- which it is not, see *Phillips*, 347 Ga. App. at 152 (2) -- neither the State nor the trial court ever mentioned the issue of prejudice. The State argues for the first time on appeal that it was prejudiced by the delayed disclosure because, according to the State, it was unable to investigate the circumstances of the note. However, the State never requested any additional time to investigate the note, and nothing in the record suggests that it could not have conferred with Talon concerning the note before trial.

---

[4] On appeal, the State seemingly faults the defense for failing to take additional steps to show "the circumstances under which the letter was written[.]" This argument is unpersuasive. To the extent that the State is suggesting that the trial court's ruling was premised on something other than a discovery violation, the transcript reflects that the State repeatedly and exclusively objected to the admission of the note on the basis of the discovery violation, which the trial court sustained. Second, Appellant had no burden; instead, it was the responsibility of the "State to make the requisite showing of prejudice and bad faith." *Mitchell v. State*, 326 Ga. App. 899, 901 (1) (a) (755 SE2d 308) (2014).

Based on the foregoing, the trial court abused its discretion when it excluded the note without requiring the State to make a showing of bad faith and prejudice. See *Phillips*, 347 Ga. App. at 152 (2); *Mitchell v. State*, 326 Ga. App. 899, 901 (1) (a) (755 SE2d 3058) (2014). This conclusion, however, does not end our inquiry. "[T]o obtain reversal based on any such error, [Appellant] must show that he was harmed by the ruling." *Parker*, 309 Ga. at 743 (4). "For a nonconstitutional ruling like the one at issue here, the test for determining harmless error is whether it is highly probable that the error did not contribute to the verdict." *Allen v. State*, 310 Ga. 411, 415 (2) (851 SE2d 541) (2020). The State bears the burden of making this showing on appeal. See *Bozzie v. State*, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017).

As part of its prosecution for aggravated assault, the State was required to prove a "general intent to injure," which may be "proven by circumstantial evidence and is a question of fact for the trier of fact to determine." *Maynor v. State*, 257 Ga. App. 151, 153 (570 SE2d 428) (2002). Here, the primary issue before the jury was not whether Talon was shot but *how* he was shot and why.[5] Indeed, in its opening statement and closing argument, the State argued vigorously that the shooting was

[5] While it is axiomatic that the State need not prove motive, see *Hood v. State*, 309 Ga. 493, 502 (847 SE2d 172) (2020), the "why" here involves Appellant's defenses of self-defense and accident.

neither accidental or defensive, but instead, that it was intentional. To resolve these questions, the jury was required to sift through the conflicting testimony of three individuals, namely Appellant, Green, and Christian. And, contrary to the State's assertion on appeal, the evidence at trial was not overwhelming. The three men present when the shooting occurred gave conflicting accounts of what happened on the day in question, but there was a consensus that there was a verbal altercation before the shooting and that, at some point, there was a physical altercation between Appellant and Talon.[6] Appellant and Christian testified that the physical altercation took place *before* the shots were fired -- suggesting that the shooting was either accidental or defensive -- while Talon claimed that he assaulted Appellant *after* being shot.

Further, while Appellant and Christian were confronted with their prior inconsistent statements, we cannot say that this impeachment was so overwhelming that it necessarily nullifies Talon's own prior statement in which he acknowledged his "smart attitudes" and stated that Appellant *did not mean to shoot him.* While the

---

[6] Law enforcement testified that Appellant had abrasions on his neck at the time of his interview, though they downplayed the severity of those injuries.

State maintains that Talon's note "is not exculpatory,"[7] the writing speaks directly to the central issue in determining Appellant's guilt here. In short, we cannot say that it is "highly probable" that the exclusion of this note did not contribute to the verdict.[8] See *Phillips*, 347 Ga. App. at 154-155 (2) (exclusion of defendant's medical records on the basis of discovery violation not harmless where they helped establish defendant's theory of the crime and defenses).

Accordingly, the judgments of convictions are reversed, and this case is remanded for a new trial.

*Judgment reversed, and case remanded for a new trial. Rickman, C. J., and Dillard, P. J., concur*.

---

[7] The State points out that Talon testified that he wrote the note while he was "heavily medicated," but Talon *also* testified that he remembered writing it. The circumstances surrounding the note's creation -- as well as any questions pertaining to its reliability -- are for the jury to consider.

[8] The State has not argued, either below or on appeal, that the note was otherwise inadmissible, and we do not consider such an argument.