**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: January 5, 2026

S25A1055.  SMITH v. THE STATE.

BETHEL, Justice.

A jury found Travis Smith guilty of malice murder and other crimes in connection with the shooting death of Cortez Dowell.[1] On appeal, Smith argues that the trial court erred by admitting certain

---

[1] The crimes occurred on July 27, 2014. On November 25, 2014, a Fulton County grand jury indicted Smith for malice murder (Count 1), two counts of felony murder (Counts 2 and 3), aggravated assault with a deadly weapon (Count 4), two counts of possession of a firearm by a convicted felon (Counts 5 and 6), and possession of a firearm during the commission of a felony (Count 7). At a jury trial in June 2016, Smith was found guilty on Counts 1-5 and 7. Count 6 was nolle prossed after the verdict.

The trial court sentenced Smith to serve life in prison without the possibility of parole on Count 1, five years concurrent on Count 5, and five years consecutive on Count 7. The court purported to merge  the remaining counts into the malice murder conviction, but the felony murder counts were actually vacated by operation of law. See *Depriest v. State*, 319 Ga. 874, 874 n.1 (2024).

Smith filed a timely motion for new trial on June 29, 2016, which was amended three years later in 2019 and then again in 2022 and in 2025, each time through different counsel. Following a hearing in March 2025, the trial court denied the amended motion on April 1, 2025. Smith then filed a timely notice of appeal, which was docketed to the August 2025 term of this Court and submitted for a decision on the briefs.

testimony and by denying his motions for mistrial. He also argues that trial counsel rendered ineffective assistance by failing to object to the State's closing argument and to certain jury instructions. For the reasons that follow, we affirm.

1. The evidence admitted at trial showed the following. On July 27, 2014, Smith was playing dice with Dowell at a house where dozens had gathered to eat, drink, and hang out. Kisha McNeil saw Smith and Dowell start "having words" and "tussling." McNeil told police she saw Smith shoot Dowell three times, though she testified at trial that she saw the men arguing and fighting but did not see the gun and only heard the shots. After she ran outside, McNeil saw Smith still carrying a gun and another man with a gun who then asked Smith, "Bruh, why the f**k did you do that?" According to McNeil, Smith replied, "[T]he mother-f**ker should not [have] tried me."

After the incident, Terrence Douglas contacted police as an anonymous tipster, reporting that Smith and Dowell got into an argument that became physical and that Smith pulled a gun out of

2

his waistband and shot Dowell three times. At trial, Douglas testified that a fight broke out between Dowell and Smith and that he saw Smith with a gun, though he denied telling investigators that he saw Smith shoot Dowell.

Nicholas Crawford, a third witness and an acquaintance of Dowell's, saw Dowell gambling and, after the fight broke out, saw Dowell punch someone. Crawford then saw a gun raised and Dowell fighting with the person with the gun, after which Crawford heard gunshots. Dowell died as a result of gunshot wounds to his abdomen.

2. Smith first argues that the trial court abused its discretion by admitting certain evidence and testimony at trial because, he says, the evidence constituted hearsay and its admission violated his rights under the Confrontation Clause of the Sixth Amendment.[2] His claims fail.

---

[2] Although this portion of Smith's brief contains broad citations to the record, he makes no effort to identify with any specificity the precise testimony he contends should have been excluded or to explain or contextualize any of the cited portions of testimony. Further hampering our review of these claims, Smith provides only cursory analysis as to why the evidence at issue amounted to hearsay or how its admission violated his right of confrontation. Despite these omissions, we reviewed the record in an attempt to determine the specific evidence or testimony that is the subject of each of Smith's claims.

(a) First, Smith asserts that the trial court abused its discretion by overruling his objections to McNeil's in-court identification of him. First, when the prosecutor initially asked McNeil if the person she heard say "the mother-f\*\*ker should not [have] tried me" was in the courtroom, Smith interposed an objection before McNeil could respond, though he did not state the grounds for the objection. The trial court overruled the objection, and McNeil was permitted to respond, indicating, "I think so," and then identifying Smith. Again, Smith objected, arguing that McNeil "didn't even say that she could" identify Smith, but rather "[s]he said I think so." The trial court made no definitive ruling on the second objection. Now, on appeal, Smith argues that McNeil's identification should have been excluded on hearsay and Confrontation Clause grounds.

To preserve for ordinary appellate review a trial court's ruling admitting evidence, a defendant must not only object to the introduction of the evidence at trial, but he must also specify the particular basis for his objection. See *Adams v. State*, 306 Ga. 1, 3

4

(2019) ("[T]o preserve an objection for ordinary appellate review, the specific ground of the objection must be made at the time the challenged evidence is offered." (cleaned up)). See also OCGA § 24-1-103(a)(1) (a trial court's ruling admitting evidence is ordinarily reviewable only when "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context"). Because Smith did not specifically object on hearsay or Confrontation Clause grounds to the admission of this testimony at trial and those grounds were not apparent from the context, we review only for plain error. See *Pittman v. State*, 318 Ga. 819, 830 (2024). To show plain error, Smith bears the burden of showing legal error that was not affirmatively waived, was clear and obvious, "which generally means there must be on-point controlling authority or the unequivocally clear words of a statute or rule that plainly establish that the trial court erred," affected his substantial rights, which generally means it must have affected the outcome of the trial court proceedings, and seriously affected the fairness, integrity, or public reputation of judicial

proceedings. *Dees v. State*, 322 Ga. 498, 500–01 (2025) (cleaned up). See also *Gates v. State*, 298 Ga. 324, 327 (2016). Smith cannot establish clear or obvious error here, so his claim fails.

As an initial matter, McNeil's testimony identifying Smith as the person she saw after the crimes does not meet the definition of hearsay. See OCGA § 24-8-801(c) ("'Hearsay' means a statement, *other than one made by the declarant while testifying at the trial* or hearing, offered in evidence to prove the truth of the matter asserted." (emphasis supplied)). See also *Davenport v. State*, 309 Ga. 385, 391 (2020) (witness's testimony based on her own observations, not what someone else told her, is not hearsay). Accordingly, there was no error, let alone plain error, in the trial court's refusal to exclude this testimony as hearsay.

Smith's argument that McNeil's testimony should have been excluded under the Confrontation Clause of the Sixth Amendment to the United States Constitution likewise fails. As we have explained, "[w]ith respect to the right to confrontation, the Sixth Amendment provides two types of protections for a criminal

defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Burney v. State*, 309 Ga. 273, 282–83 (2020) (quotation marks omitted). And here, McNeil testified at trial and Smith did, in fact, cross-examine her. As such, Smith has failed to show that his right to confront this witness was violated. See id.

(b) Smith next argues that the trial court erred by admitting testimony by an investigating detective regarding his conversation with a witness who subsequently provided a photo of Smith to the detective. Smith's brief, however, fails to specify which portion of the detective's testimony that he contends should have been excluded and instead merely references a span of pages in the trial transcript. From our review of the portion of the record Smith cites in support of this claim of error, the trial court in fact sustained Smith's hearsay objections to the detective's testimony. As such, this claim presents no cause for reversal.

Additionally, Smith did not raise an objection under the Confrontation Clause to the portion of the detective's testimony that

7

he cites in his brief, so we review that claim only for plain error. And under plain error review, Smith's argument, which he fails to support with authority, fails under the second prong because he cannot establish clear or obvious error. The detective did not testify to the substance of the witness's statements about the picture she sent to him – only the fact that she sent it to him. It is not clear under existing law that the mere fact that a picture was sent, without any context or additional commentary, is a "statement" or an "assertion" that would be subject to the Confrontation Clause. See *Dees*, 322 Ga. at 500; *State v. Gilmore*, 312 Ga. 289, 293 (2021) (noting that "this Court and others have concluded that nonverbal conduct does *not* constitute a statement when it is not intended to be an assertion" (emphasis in original)). See also OCGA § 24-8-801 (defining a "statement" to include the "[n]onverbal conduct of a person, if it is intended by the person as an assertion"); *State v. Orr*, 305 Ga. 729, 740–41 (2019) (noting that "the key to the definition of 'statement' is that nothing is an assertion unless intended to be one, [such as] … the act of an eyewitness pointing to identify a suspect in

a lineup as the perpetrator of a crime"). Accordingly, Smith cannot establish that the trial court plainly erred by failing to exclude the evidence on this basis.

(c) Smith also argues that the trial court abused its discretion by admitting the photograph of Smith the witness provided to the detective because, he says, the evidence was hearsay and its admission violated his rights under the Confrontation Clause. But the portion of the record Smith cites in support of this claim of error reflects that the trial court sustained Smith's hearsay objection to the prosecutor's asking the detective whether other information the witness provided with the photo "contain[ed] a name." The record does not reflect that Smith otherwise objected to the photograph's admission, so we review only for plain error. Beyond his broad assertions that the photograph should have been excluded as hearsay and under the Confrontation Clause, Smith makes no effort to explain either how the photograph itself constitutes hearsay or how its admission resulted in the violation of his right of confrontation. And in fact, the case law undercuts Smith's position.

9

Decisions applying the Confrontation Clause have generally held that the Clause "applies only to testimonial statements, not to inanimate objects that cannot be cross-examined like … shell casing[s] and photographs." *Walker v. State*, 308 Ga. 749, 758 (2020), disapproved of on other grounds by *Johnson v. State*, 315 Ga. 876, 885 n.8 (2023). See also *United States v. Farrad*, 895 F3d 859, 877 (6th Cir. 2018) (rejecting defendant's argument that photographs of guns—including one featuring a person who looked like the defendant and others showing a close-up of a hand holding a gun— "were all out-of-court 'statements' that [the defendant] illegally possessed a firearm," and concluding that the photographs did not constitute nonverbal statements (citation and punctuation omitted)); *Dees*, 322 Ga. at 502 (not clear or obvious error for trial court to exclude un-objected-to hearsay). As such, Smith has not met his burden of showing that the trial court abused its discretion by failing to exclude the photograph on either basis, and this claim fails. See *Williams v. State*, 316 Ga. 304, 309 (2023) ("[B]ecause currently existing legal authority stands for the contrary position,

10

the alleged error must be considered subject to reasonable dispute and thus cannot constitute plain error." (quotation marks omitted)).

(d) Lastly, Smith contends that the trial court should have excluded the detective's testimony that the witness who provided the photograph of Smith "gave him helpful information" on hearsay and Confrontation Clause grounds. But the portion of the record Smith cites in support of this enumeration does not contain any testimony to that effect, and Smith's brief contains no additional details that would help us identify the specific testimony at issue. Thus, to the extent this enumeration concerns additional evidence not already addressed above, we conclude that Smith has not carried his burden to show that the testimony he obliquely refers to should have been excluded on hearsay and Confrontation Clause grounds. See *Roberson v. State*, 300 Ga. 632, 636 (2017) (holding that "[i]t is well established that the burden is on the party alleging error to show it by the record" (cleaned up)).

3. Smith next argues that the trial court abused its discretion by denying his motions for mistrial after the State elicited testimony

11

about witness intimidation and after a detective commented on Smith's invocation of his right to remain silent.

(a) Turning first to the issue of witness-intimidation evidence, Smith points to three statements made by McNeil on direct examination that, he says, warranted a mistrial. Specifically, McNeil acknowledged that she had reported to the district attorney's office before trial that she was scared to testify because she was "hearing stuff in the street," that she had moved because she "was hearing stuff in the street [that she was] going to get killed," and that she had inquired to the district attorney's office about protective custody. Smith objected after each of the three responses, and the trial court sustained each objection. Additionally, the trial court ordered that the second response be stricken and gave a curative instruction to the jury. Later, outside the jury's presence,[3] Smith moved for a mistrial on the basis that McNeil had testified that she was afraid she was going to be killed and mentioned

---

[3] Smith first moved for a mistrial after the second response at issue, but the trial court deferred its ruling.

12

requesting protective custody. The trial court denied the motion for mistrial but offered to give a curative instruction as to the testimony about protective custody, though the record does not show that Smith accepted the court's offer. Now, on appeal, Smith asserts that McNeil's testimony about witness intimidation was improperly admitted and that a mistrial was the only appropriate remedy.[4] We disagree.

"Whether to grant a mistrial is within the trial court's discretion, which an appellate court will not disturb unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." *Parker v. State*, 309 Ga. 736, 738 (2020) (quotation marks omitted).

Here, the trial court sustained Smith's objections to McNeil's

---

[4] In this section of his appellate brief, Smith also briefly references a question posed to Douglas by the prosecutor as to whether "people get retaliated against when they testify." But the record reflects that Smith objected to this question, the trial court sustained the objection, and Douglas did not respond. Smith did not move for a mistrial based on this question. Thus, to the extent Smith asserts on appeal that the trial court should have granted a mistrial following this question, his failure to promptly move for a mistrial means that the issue was not preserved for appellate review. See *Pittman*, 318 Ga. at 829.

testimony regarding the threats against her and her inquiry about protective custody, struck McNeil's second response at issue and gave a curative instruction about that response, and offered an additional curative instruction regarding the response about her protective-custody inquiry, which Smith did not pursue. The trial court's actions preserved Smith's right to a fair trial, and there was no abuse of discretion in denying Smith's motion for mistrial. See *Hartsfield v. State*, 294 Ga. 883, 886 (2014) (no abuse of discretion in denying a mistrial where the trial court sustained the objection, admonished the prosecuting attorney in the presence of the jury, and told the jury to disregard the statement); *Jackson v. State*, 292 Ga. 685, 689 (2013) (no abuse of discretion in denying a mistrial where trial court sustained objection and gave curative instruction regarding improper reference). See also *Perkins v. State*, 313 Ga. 885, 897 (2022) ("[J]uries are presumed to follow curative instructions in the absence of proof to the contrary." (quotation marks omitted)).

(b) Smith also argues that a mistrial was warranted following

the detective's testimony that Smith "lawyered up" and did not wish to talk to investigators. Smith objected to this testimony immediately, which the trial court sustained. The court struck the testimony and instructed the jury to disregard it. After the detective's testimony had concluded, as well as that of a following witness, and after the parties began discussing the charges with the court, Smith moved for a mistrial based on the detective's earlier testimony. Smith's counsel claimed below and on appeal that she did not hear the detective's testimony until co-counsel pointed it out to her. However, the record shows that Smith's counsel lodged a contemporaneous objection to the same, which the trial court sustained.

"It is well established that a motion for a mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion." *Lee v. State*, 317 Ga. 880, 884 (2023) (quotation marks omitted). Because Smith did not move for a mistrial contemporaneously with the testimony at issue and because Smith's excuse for failing to do so is belied by the record, the issue is not

15

preserved for appellate review. See *Pittman*, 318 Ga. at 829 (claim of error not timely made where defendant did not move for mistrial until after the prosecutor had completed its examination of the witness); *Coley v. State*, 305 Ga. 658, 661–62 (2019) (claim of error related to denial of mistrial following admission of bad-character evidence was not preserved for appeal where the motion was not made contemporaneously with the testimony at issue); *Burrell v. State*, 301 Ga. 21, 26 (2017) (where State's witness had emotional outburst on direct-examination, defendant's motion for mistrial made after the defendant had completed the cross-examination failed to preserve the issue for review).

4. Smith alleges that his trial counsel provided constitutionally ineffective assistance in several ways. To demonstrate ineffective assistance, a defendant must show both that his trial counsel performed deficiently and that he was prejudiced by the deficient performance. *Smith v. State*, 315 Ga. 357, 365 (2022) (citing *Strickland v. Washington*, 466 US 668, 687 (1984)). The deficiency prong requires the defendant to "show that his attorney performed

at trial in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Williams v. State*, 316 Ga. 304, 314–15 (2023) (quotation marks omitted). The prejudice prong requires the defendant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith,* 315 Ga. at 365 (quotation marks omitted). Showing that the error had "some conceivable effect on the outcome of the proceeding" is not enough; the defendant must instead "establish a reasonable probability of a different result, which means a probability sufficient to undermine confidence in the outcome." *Neuman v. State*, 311 Ga. 83, 96–97 (2021) (quotation marks omitted). Demonstrating ineffective assistance is a "high bar," and if a defendant fails to prove either deficiency or prejudice, we are not required to consider the other. *Mohamed v. State*, 307 Ga. 89, 93 (2019).

(a) Smith argues that trial counsel should have objected to two instances in the State's closing where the State raised Smith's alleged future dangerousness, one of which also ran afoul of the

"golden rule." Because Smith has not shown deficient performance, these arguments fail.

In closing, the prosecutor argued:

> We have a man, Travis Smith, who just shot someone for no reason, in front of 15 to 30 people, in that room. Would you be afraid of him? He didn't care who saw, because he was expecting exactly what happened. He was expecting that no one would come in here and say what he did, because he's bad enough, because they're afraid of him. But ain't nobody afraid of Travis. The State of Georgia is not afraid of Travis. That's exactly why he did it, because he was expecting everybody to be quiet. He was expecting it to go away.

On appeal, Smith argues that counsel should have objected to the first part of the State's closing because the question to the jury — "Would you be afraid of him?" — ran afoul of the "golden rule" and also constituted an improper future dangerousness argument. We disagree.

"Under Georgia law, golden rule violations occur when a party asks the jurors to place themselves in the position of the victims." *King v. State*, 316 Ga. 611, 624 (2023) (quotation marks omitted). Here, however, the prosecutor did not ask the jurors to put

themselves in the victim's position. Instead, the prosecutor's question to the jury came in the broader context of responding to points Smith emphasized during his closing argument regarding Douglas's initial anonymous tip to police, as well as Smith's efforts to discredit the testimony of Douglas and other reluctant witnesses. Accordingly, an objection to this portion of the State's closing argument based on the "golden rule" would have been meritless, and failure to make a meritless objection is not constitutionally deficient. See id. (no deficient performance for failing to make a "golden rule" objection where the prosecutor did not ask the jurors to place themselves in the victim's position).

Nor would an objection on "future dangerousness" grounds have succeeded because the prosecutor's argument was not an improper future dangerousness argument. "A prosecutor argues future dangerousness when the prosecutor asserts there will be more victims if the defendant is not found guilty, or the community or witnesses will be endangered if the defendant is not found guilty." *Fulton v. State*, 278 Ga. 58, 65 (2004) (cleaned up). The prosecutor's

19

statement here was not that kind of argument. Instead, it is clear from the context that the prosecutor was making a permissible inference from the evidence. See *Willis v. State*, 304 Ga. 686, 719 (2018). That is, the prosecutor was suggesting that Smith, who had brazenly killed Dowell in the presence of numerous witnesses, might have expected that those witnesses would be afraid of him and would therefore not testify against him. See *Arrington v. State*, 286 Ga. 335, 346–47 (2009) (noting the prosecution's wide latitude to argue inferences from the evidence and declining to construe the State's argument based on such inferences as an improper future dangerousness argument). In other words, the prosecutor was not suggesting that Smith might hurt more people in the future if he were found not guilty, which is the kind of argument we have held is improper. Therefore, counsel was not deficient for failing to object on these grounds. See *Smith*, 315 Ga. at 367 ("failure to make a meritless objection is not deficient performance").

(b) In his second claim of ineffective assistance, Smith asserts that trial counsel should have objected to the inclusion in the jury

20

charge of "witness intelligence" as a factor to consider in evaluating witness credibility.[5] The Court has repeatedly held that while the better practice is to "omit [reference to witness] intelligence as one of the factors in the credibility charge, its inclusion is not reversible error." *Jackson v. State*, 318 Ga. 393, 404 (2024) (quotation marks omitted) (collecting cases). "And because the inclusion of the intelligence portion of the instruction is not itself reversible error," Smith "cannot show the prejudice necessary to succeed on his claim that counsel rendered ineffective assistance in failing to object to the charge, and this claim fails." Id.

(c) Smith next argues that trial counsel should have objected to

---

[5] The trial court instructed the jury:

You must determine the credibility or believability of the witnesses. It is for you to determine which witness or witnesses you believe or do not believe, if there are some whom you do not believe. In deciding credibility, you may consider all of the facts and circumstances of the case, including the manner in which the witnesses testify, *their intelligence*, their interest or lack of interest in the case, their means and opportunity for knowing the facts about which they testify, the nature of the facts about which they testify, [and] the probability or improbability of their testimony and of the other occurrences about which they testify. (Emphasis added.)

21

the pattern jury charge on prior consistent statements.[6] Smith argues that counsel's failure to object prejudiced him because the instruction placed undue emphasis on Douglas's prior identification of Smith through his anonymous tip. We are not persuaded.

This Court has said that "an instruction on prior consistent statements should no longer be given except where the circumstances of an unusual case suggest that the jury may have the mistaken impression that it cannot consider a prior consistent statement as substantive evidence." *Stephens v. State*, 289 Ga. 758, 759 (2011). But we also have said that giving that instruction "will usually not be reversible error," particularly where "the court's instructions, taken as a whole, would not mislead a jury of average intelligence." *Williamson v. State*, 305 Ga. 889, 895 (2019) (collecting cases). In this case, the jury was charged that "evidence"

---

[6] The trial court instructed the jury:

Should you find that any witness has made a statement prior to this case that is consistent with that witness'[s] testimony from the witness stand, and such prior consistent statement is material to the case and to the witness'[s] testimony, then you are authorized to consider the other statement as substantive evidence.

includes all of the testimony of the witnesses and that the jury was to determine what testimony to believe and what weight to give each witness's testimony. The jury also was instructed about how to determine credibility. And, as we have recognized, the pattern instruction at issue "does not explicitly direct the jury to place any additional weight on prior consistent statements beyond that which the law already gives them." Id. Given these circumstances, we see no reversible error in this instruction. Id. And because the instruction on prior consistent statements was not itself reversible error here, Smith "cannot show the prejudice necessary to succeed on his claim that counsel rendered ineffective assistance in failing to object to the charge, and this claim fails." *Jackson*, 318 Ga. at 404.

5. Finally, we consider whether the combined prejudicial effect of trial counsel's assumed deficiencies warrants a new trial. See *Schofield v. Holsey*, 281 Ga. 809, 811 n.1 (2007), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 17 (2020). "[W]e have stated that a defendant must show that the cumulative prejudice from any assumed deficiencies showed a reasonable probability that the

results of the proceeding would have been different in the absence of the alleged deficiencies." *Waters v. State*, 317 Ga. 822, 832 (2023) (cleaned up). For purposes of this analysis, we presumed deficient performance of counsel with respect to the instructions on witness intelligence and prior consistent statements. But the collective effect of these presumed errors is not sufficiently harmful to warrant a new trial because, as we already determined above, there was little, if any, prejudicial effect from the presumed deficiencies. See *Lee v. State*, 318 Ga. 412, 430 (2024). Accordingly, Smith's claim of cumulative error fails.

*Judgment affirmed. All the Justices concur.*